KEYSTONE REALTY, Appellant, v. GLENN OSTERHUS AND LAVERNE OSTERHUS, Respondents.

No. 21275

March 28, 1991                                        807 P.2d 1385

*Jack I. McAuliffe and Michael T. McAuliffe,* Reno, for Appellant.

*Stephens, Knight & Edwards,* Reno, for Respondents.

## OPINION

*Per Curiam:*

In this appeal, the court is asked to consider a dispute between a real estate agency and a married couple who purchased a residential building lot for the construction of a custom home. After a jury trial, a $74,201.78 judgment was entered against the real estate agency. For the following reasons we affirm in part and reverse in part.

### THE FACTS

On February 9, 1985, the respondents, Glenn and LaVerne Osterhus, saw a newspaper advertisement for the sale of residential building lots in a subdivision called the Northwood Estates.

The Osterhuses visited a model home in this subdivision where they met Lee Drace, a real estate agent employed by Keystone Realty. Keystone Realty, in turn, had been hired by M. L. Michaelsen to sell lots and homes in the subdivision.

Mr. Drace showed a building lot to the Osterhuses and then escorted the couple a few hundred feet to Jon Michaelsen, M. L. Michaelsen's son. Drace told the Osterhuses that "Michaelsen" owned the property, and the Osterhuses signed an offer and acceptance agreement executed by Jon Michaelsen as the seller, wherein the Osterhuses agreed to buy the lot and a custom home for $160,000.00.[1]

Thereafter, on March 8, 1985, Jon Michaelsen, Lee Drace, and Mr. and Mrs. Osterhus gathered at the Osterhus' home on Stephanie Way, and a second offer and acceptance agreement was executed. This second agreement contained the following clause:

> Purchaser to pay 50,000 to builder 8 Mar 85 to pay for lot. Remainder of purchase price to be paid in cash @ closing[.]

An escrow account was in place for the collection of funds for the Northwood Estates purchase; nonetheless, immediately after the March 8, 1985 offer and acceptance agreement was signed, Mrs. Osterhus asked Lee Drace who should receive the $50,000.00 specified in that agreement. Lee Drace told Mrs. Osterhus to pay this amount to Jon Michaelsen, and Mrs. Osterhus complied.

The March 8, 1985 offer and acceptance agreement also made the purchase of the Northwood Estates lot and custom home contingent upon the sale of the Osterhus' Stephanie Way residence, and Lee Drace agreed to sell this home for Mr. and Mrs. Osterhus. At no time did Drace indicate that he was not the Osterhus' agent on the purchase of the lot and custom home in the Northwood Estates subdivision.

Thereafter, either on March 8, 1985, or near to that time, the Osterhuses began to ask Lee Drace when they would receive the deed to their new lot. Generally, when questioned, Drace told the Osterhuses he would see that Jon Michaelsen delivered the deed.

Construction on the Northwood Estates home commenced in late August, 1985, and terminated approximately two months later, in October. The Osterhuses moved into their new home, but they still had not received the deed to the lot underneath the home.

---

[1]Record title to this lot was held by M. L. Michaelsen and Bedie Michaelsen and the lot was encumbered by $48,500.00 in debt obligations owed to Pioneer Citizen's Bank and The Lloyd Gotchy Trust.

Then, in November, 1985, Jon Michaelsen asked the Osterhuses to give a check for $9,600.00 to cover Keystone Realty's real estate commission on the Northwood Estates property. Mrs. Osterhus gave Jon Michaelsen a check for this amount; she had already paid Keystone Realty a commission of $4,500.00 for selling the home on Stephanie Way.

In June, 1986, the Osterhuses discovered that title to the Northwood Estates lot remained in the names of M. L. and Bedie Michaelsen, and that the property was encumbered by $48,500.00 in obligations owed to Pioneer Citizen's Bank and The Lloyd Gotchy Trust. The lot was also encumbered by a $2,677.00 tax obligation and a $457.27 power bill lien.

On July 30, 1986, the Osterhuses filed a complaint in the district court naming, among others, Keystone Realty, Jon Michaelsen, M. L. Michaelsen and Bedie Michaelsen as defendants. In December 1986, title to the subject property was transferred from M. L. Michaelsen and Bedie Michaelsen to Jon Michaelsen by a recorded quitclaim deed. Thereafter, Bedie Michaelsen died, and Jon and M. L. Michaelsen declared bankruptcy.

The bankruptcy trustee then deeded the lot to the Osterhuses; however, before they could acquire the deed to the lot, the Osterhuses had to secure a loan for $48,500.00 to satisfy the debt owed to Pioneer Citizen's Bank and The Lloyd Gotchy Trust.

The Osterhuses pursued their lawsuit against Keystone Realty, and at the conclusion of a jury trial were awarded $75,201.78 in damages. Keystone Realty filed a motion to vacate, or in the alternative, to amend the judgment. The district court denied the motion and, thereafter, awarded prejudgment interest on the entire damage award from the commencement of the lawsuit. This appeal followed.

### THE STANDARD OF REVIEW

In general, the findings of the trier of fact will be affirmed on appeal if the findings are based upon substantial evidence in the record. NRCP 52(a). *See also* Ivory Ranch, Inc. v. Quinn River Ranch, Inc., 101 Nev. 471, 705 P.2d 673 (1985). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." State, Emp. Security v. Hilton Hotels, 102 Nev. 606, 608, 729 P.2d 497, 498 (1986) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).

### LIABILITY

First, Keystone Realty contends there was insufficient evidence

produced at the trial to support the jury's verdict against them. We disagree.

An agency agreement can be either express or implied in fact. *See* H.–H.–M. Safe Co. v. Balliet, 38 Nev. 164, 145 P. 941 (1914). It is uncontroverted that Keystone Realty did not expressly agree to act as the Osterhus' agent on the purchase of the lot and custom home in the Northwood Estates subdivision; however, whether these parties impliedly entered into such an agency agreement is a question of fact for the trier of fact. Northern Nev. Mobile Home v. Penrod, 96 Nev. 395, 397, 610 P.2d 724, 726 (1980). After reviewing the record, we conclude that the interrelated transactions of the parties, along with the representations and advice given by Lee Drace, constitute substantial evidence to support the conclusion that Keystone Realty impliedly agreed to act as the Osterhus' agent in their purchase of the Northwood Estates lot and home.

We likewise find substantial evidence to support a finding that Keystone Realty was negligent in these transactions: first, Keystone Realty had a duty to properly ascertain who had title to the lot before representing Jon Michaelsen was the "seller"; second, Lee Drace improperly advised the Osterhuses to pay $50,000.00 directly to Jon Michaelsen rather than through the escrow account. Accordingly, we affirm on the issue of liability.

## THE JURY'S DAMAGE AWARD

The Osterhuses received $74,201.78 in damages including damages for the following: (1) $48,500.00 to compensate the Osterhuses for the loan they secured to satisfy the debt owed to Pioneer Citizen's Bank and The Lloyd Gotchy Trust; (2) $8,377.51 for interest paid on the $48,500.00 loan; (3) $2,677.00 for back taxes on the lot; (4) $457.27 for the power bill lien on the lot; (5) $9,600.00 for the amount the Osterhuses paid Jon Michaelsen to cover the real estate commission Keystone Realty was to receive for selling the lot and home in the Northwood Estates subdivision; and, finally, (6) $4,500.00 for the real estate commission paid to Keystone Realty for the sale of the home on Stephanie Way. Keystone Realty asserts the damages the Osterhuses received were excessive. We agree.

There is nothing in the record to support a conclusion that Keystone Realty, through some act or omission, caused the Osterhuses to pay $9,600.00 to Jon Michaelsen for their real estate commission on the Northwood Estates properties. Further, there is nothing in the record to indicate why the Osterhuses should be relieved of their contractual obligation to pay the

$4,500 real estate commission Keystone Realty earned by selling the home on Stephanie Way. Therefore, the Osterhuses were not entitled to receive damages for the amounts they paid for these real estate commissions. We affirm the remainder of the jury's damage award, including the award of $8,377.51 for interest paid on the $48,500.00 loan.

## PREJUDGMENT INTEREST

Prejudgment interest on the Osterhus' damage award started to accrue from the date the damages were actually sustained, and not from the date the complaint was filed or the judgment entered. LTR Stage Lines v. Gray Line Tours, 106 Nev. 283, 289, 792 P.2d 386, 390 (1990). The Osterhuses did not pay the back taxes and outstanding utility bills on the lot until September of 1988. Further, the interest payments made by the Osterhuses on the $48,500.00 loan amount accrued on a monthly basis after the commencement of the lawsuit. The district court erred when it awarded prejudgment interest from the commencement of the lawsuit for these damages.

Further, the Osterhuses should not receive prejudgment interest on the damages encompassed by the $48,500.00 loan. As previously discussed, the jury had already awarded the Osterhuses $8,377.51 for the interest paid on this loan, and the Osterhuses are not entitled to a double recovery of this interest. Accordingly, we remand this matter back to the district court for a calculation of prejudgment interest consistent with this opinion.