Nichole HOSEY, et al., Plaintiffs,

v.

The **PRESBYTERIAN CHURCH (U.S.A.), Defendant.**

No. 94–MC–423–SAC.

United States District Court, D. Kansas.

Feb. 2, 1995.

162

## ORDER

NEWMAN, United States Magistrate Judge.

This is a diversity action pending in the United States District Court for the Western District of Oklahoma. Plaintiffs have served a subpoena duces tecum upon the Menninger Clinic for all medical records and other records related to Robert Bruce Brigden. The Menninger Clinic, as movant herein, has filed a Motion for Protective Order (doc. 1) under a claim of privilege afforded by Kansas law under K.S.A. 65–5602. Plaintiffs have filed a response, which response has been supplemented. The movant has filed a reply. Although the parties had previously disputed whether this discovery was out of time under the discovery orders entered in the Western District of Oklahoma, the court has now been furnished with an order entered by the Honorable David L. Russell, United States District Judge for the Western District of Oklahoma, dated December 9, 1994, which permits the plaintiffs to pursue the discovery which is the subject of this dispute. The court is, therefore, prepared to rule.

The plaintiffs' amended complaint alleges that Robert Bruce Brigden was an ordained minister under the auspices of The Presbyterian Church (U.S.A.), at least during the period July 1969 until 1992. It is alleged that during this period Mr. Brigden engaged in certain sexually inappropriate conduct with children, including the plaintiffs who were children in his church in Alva, Oklahoma. The plaintiffs allege that the defendant was negligent in hiring Mr. Brigden, in failing to supervise Mr. Brigden, in failing to investigate allegations of inappropriate behavior with children, and in failing to warn churches in Beloit, Kansas, and Alva, Oklahoma, as well as the Presbyteries and Synods associated therewith. Plaintiffs claim damages for physical and mental injuries as a result of the alleged conduct.

It is alleged that Mr. Brigden engaged in the inappropriate behavior while a minister at a Presbyterian Church in Wellington, Kansas, from which he moved to accept a call to a Presbyterian Church in Beloit, Kansas. It is alleged that his conduct continued while in Beloit, Kansas. Prior to his departure from Beloit, Kansas, to become the minister of a Presbyterian Church in Alva, Oklahoma, Mr. Brigden apparently underwent certain diagnostic procedures at the Menninger Clinic in Topeka, Kansas. It is argued by the plaintiffs that this treatment may have been the subject of certain discussions with representatives of the Presbytery, of which the church in Beloit is a member, prior to Mr. Brigden's departure for Alva, Oklahoma. Mr. Brigden did disclose to the Session of the church in Beloit his alleged diagnosis at the Menninger Clinic on November 5, 1986.

Upon service of the subpoena upon the Menninger Clinic, the movant filed the Motion for Protective Order, which is in issue. Menninger claims that K.S.A. 65–5602 affords a privilege to a patient to prevent the disclosure by a mental health treatment facility of his patient records, which privilege it claims must be asserted by treatment personnel unless the patient has made a written waiver of the privilege. The plaintiffs respond by arguing the provisions of K.S.A. 60–427 and K.S.A. 60–437, Kansas law setting out the scope and extent of the physician-patient privilege claiming that the privilege is either inapplicable or has been waived. The plaintiffs further claim that the privilege afforded under K.S.A. 65–5602 does not apply due to the death of Mr. Brigden,

which occurred following the filing of this motion but prior to the filing of a response. Plaintiffs also argue certain public policy considerations.

In this diversity action, the privilege of a witness must be determined in accordance with state law as provided in Fed.R.Evid. 501. However, the method for asserting the privilege is controlled by federal law in this federal action, pursuant to Fed.R.Civ.P. 45.

K.S.A. 65–5602(a) provides:

A patient of a treatment facility has a privilege to prevent treatment personnel or ancillary personnel from disclosing that the patient has been or is currently receiving treatment or from disclosing any confidential communications made for the purposes of diagnosis or treatment of the patient's mental, alcoholic, drug dependency, or emotional condition. The privilege extends to individual, family, or group therapy under the direction of the treatment personnel and includes members of the patient's family. The privilege may be claimed by the patient, by the patient's guardian or conservator or by the personal representative of a deceased patient. The treatment personnel shall claim the privilege on behalf of the patient unless the patient has made a written waiver of the privilege and provided the treatment personnel with a copy of such waiver or unless one of the exceptions provided by K.S.A. 65–5603 is applicable.

K.S.A. 65–5603 provides in pertinent part:

(a) The privilege established by K.S.A. 65–5602 and amendments thereto shall not extend to:

. . . .

(3) any proceeding in which the patient relies upon any of the aforementioned conditions as an element of the patient's claim or defense, or, after the patient's death, in any proceeding in which any party relies upon any of the patient's conditions as an element of a claim or defense;

. . . .

(b) The treatment personnel shall not disclose any information subject to subsection (a)(3) unless a judge has entered an order finding that the patient has made such patient's condition an issue of the patient's claim or defense. The order shall indicate the parties to whom otherwise confidential information must be disclosed.

Under K.S.A. 65–5604, the act provides that the rules of discovery shall not take precedence over the provisions of the act which is to be interpreted to encourage treatment in a confidential setting.

The privilege afforded by K.S.A. 65–5602 applies only to patients of treatment facilities defined within the act and allows a patient to preclude disclosure of confidential communications made for the purpose of diagnosis or treatment of the patient's mental or emotional condition. The privilege afforded includes disclosure that the patient has or is currently receiving treatment. The purpose of the act is spelled out within the act itself, that being to encourage treatment in a confidential setting. See K.S.A. 65–5604. The privilege does not apply in any proceeding in which the patient relies on his mental or emotional condition as an element of the patient's claim or defense. K.S.A. 65–5603(a)(3). After the patient's death, the privilege does not apply in any proceeding in which *any party* relies upon the patient's mental or emotional condition as an element of a claim or defense. K.S.A. 65–5603(a)(3). It is this last statutory exception upon which the plaintiffs rely.

Menninger argues, however, that the records under K.S.A. 65–5603(a)(3) may only be released when a judge has entered an order finding that "the patient has made such patient's condition an issue of the patient's claim or defense." K.S.A. 65–5603(b). While the language claimed by Menninger does appear in the statute, the interpretation suggested by Menninger must be rejected. It is a basic rule of statutory construction that the court must give effect to each provision of the act, when specific provisions of the act appear to be in conflict. If the court were to adopt the construction suggested by Menninger, the court would be required to read out of the statute the clear language of that portion of K.S.A. 65–5603(a)(3) which relates to the application of the privilege after a patient's death. The court would be required to ignore the change in terminology related to the application of the privilege

under such circumstances, which suggests that the privilege does not apply if any party relies on the patient's mental or emotional condition as an element of a claim or defense rather than when the patient so relies. K.S.A. 65–5603(b) consequently can only be construed to apply to circumstances wherein the patient has placed his condition in issue or is relying upon his mental or emotional condition as an element of the patient's claim or defense. Under such circumstances, a court order is required in which a finding of such is specifically made. After the patient's death, the privilege no longer applies in a proceeding where any party relies upon the patient's condition as an element of a claim or defense.

The court's inquiry then is directed to whether any party to this action relies upon Mr. Brigden's mental or emotional condition as an element of their claim or defense. Plaintiffs argue that his mental or emotional condition is in issue because it is claimed that during the period in question Mr. Brigden was a pedophile and committed sexual misconduct with the minor plaintiffs. Plaintiffs further argue that the defendant's knowledge of Mr. Brigden's condition is in issue. The plaintiffs contend that although they have attempted discovery on this issue from the defendant itself, the defendant has claimed various privileges and has refused to disclose facts related to such knowledge, including communications which the defendant potentially had with the Menninger Clinic.

The court finds that the plaintiffs have provided an adequate showing for the applicability of the exception under K.S.A. 65–5603. Mr. Brigden's mental condition is an issue in the action. Whether he was in fact a person with a propensity to engage in sexual misconduct with the children is an underlying issue in the case. Further, the extent to which the defendant knew about this condition is also an issue. The defendant's involvement in the diagnosis of Mr. Brigden's mental or emotional condition is in issue.

The plaintiffs also argue that Mr. Brigden has waived his privilege in accordance with K.S.A. 60–437 which provides:

A person who would otherwise have a privilege to refuse to disclose or to prevent another from disclosing a specified matter has no such privilege with respect to that matter if the judge finds that such person ... (b) without coercion, or without any trickery, deception, or fraud practiced against him or her, and with knowledge of the privilege, made disclosure of any part of the matter or consented to such a disclosure made by anyone.

Plaintiffs contend that Mr. Brigden waived his privilege by disclosing the fact of his treatment at Menninger to the Session of the First Presbyterian Church in Beloit, Kansas, on October 1, 1986, and November 5, 1986. In the October 1986 Session Agenda, Mr. Brigden reports:

Bruce & Jane Brigden are scheduled for a week seminar at Menningers Oct. 27–31 as part of the moving process. Bruce needs to use a week of his education leave.

In the November 5, 1986 Session Agenda, Mr. Brigden reports:

MENNINGER REPORT: After a week of testing at the Menninger Clinic in Topeka, I was diagnosed as a high-functioning person, but one who could very easily have problems in relationships because (1) I have a high level of aggressiveness, which can cause people unconsciously to respond to me by becoming angry, without knowing why; (2) I have a high tension level which could make people think I feel too busy to spend time with them; (3) In very early childhood, by nearly suffocating myself while nursing, or by getting scratched by my father's whiskers when he hugged or kissed me, I learned that too much closeness was painful to me. Therefore, to keep from hurting others as I have been hurt, I keep a greater than usual physical and emotional distance from people, which they may sense as rejection. Menningers suggests that they have seminars, 8–weeks in length, which could teach me to change these conditions.

Later in January 1987, Mr. Brigden disclosed in his "PASTORAL MEDITATION: 'A NEW KIND OF LIFE FOR THE NEW YEAR,'" the following:

Based on a physical and psychiatric workshop I took this fall at the Menninger

Clinic in Topeka, I have learned some ways to improve my pastoral ministry.

By these disclosures Mr. Brigden clearly waived any privilege he may have had to prevent disclosure that he had received treatment for a mental or emotional condition at the Menninger Clinic. He not only disclosed that he had spent a week at the Menninger Clinic, but purportedly disclosed the diagnosis. By disclosure of the detailed diagnosis, Mr. Brigden waived any privilege he may have had to prevent disclosure of his diagnosis and treatment for mental or emotional conditions at the Menninger Clinic.

K.S.A. 60–437 applies to all privileges, including those established by K.S.A. 65–5602. While this waiver does not constitute the written waiver required under K.S.A. 65–5602(a), the waiver by the patient as a matter of law under K.S.A. 60–437 remains effective. The provisions of K.S.A. 65–5602 requiring treatment personnel to claim the privilege provided under that section on behalf of the patient unless the patient has made a written waiver of the privilege, are inapplicable to the provisions of K.S.A. 60–437 and are not inconsistent therewith. The provisions of K.S.A. 65–5603 simply require that treatment personnel must claim the privilege set forth in that section, unless a written waiver is present. It does not preclude the court from finding under K.S.A. 60–437, that the patient has waived the privilege under K.S.A. 65–5602, by his own disclosures outside the judicial proceedings. K.S.A. 60–437 is not inconsistent with the provisions of K.S.A. 65–5601 *et seq.*, and the purposes set forth therein. While the act is to be interpreted to encourage treatment in a confidential setting, it is not intended to preclude disclosure of a patient's treatment for mental or emotional conditions when the patient himself has made that disclosure and, thereby, waived the confidentiality to which he would otherwise be entitled by law.

There is an inference from the deposition testimony provided to the court that there has been disclosure concerning Mr. Brigden's diagnosis or treatment at Menninger Clinic, to various representatives of the defendant. The court has not been provided with a written waiver as to any such disclosures in the event they may have occurred. The court only notes, that in the event Mr. Brigden disclosed his diagnosis and treatment at Menninger to persons associated with the defendant, such disclosure would also form the basis for waiver under K.S.A. 60–437.

The plaintiffs have further argued general public policy considerations, which plaintiffs claim should provide an exception to the privilege set forth in K.S.A. 65–5602. The court rejects these arguments in that public policy has been established by the legislature in enacting the legislation providing for the privilege afforded under K.S.A. 65–5602. The legislature has made ample provisions under K.S.A. 65–5603 to effect certain public policy concerns such as those addressed by the plaintiffs. It obviously rejected others contained in K.S.A. 60–427 which were not specifically set forth in K.S.A. 65–5603.

By letter dated June 22, 1994, Jane C. Brigden, the wife of Mr. Brigden, asserts any privilege which she may have. The requested records do not relate to treatment or diagnosis of Mrs. Brigden, but rather solely to Robert Bruce Brigden. To the extent that there are confidential communications contained within records of Mrs. Brigden, such communications are protected under K.S.A. 65–5602 and are not subject to disclosure. The privilege afforded under K.S.A. 65–5602 is extended to members of the patient's family. Therefore, to the extent that the records reflect confidential communications by Mrs. Brigden, those communications remain privileged and are not subject to disclosure. Such communications may be redacted from the records of Robert Bruce Brigden. In the event of dispute concerning these redacted portions, they should be submitted to the court for *in camera* inspection.

The court consequently overrules Menninger's Motion for Protective Order subject to the conditions set forth as to Mrs. Brigden. (Doc. 1.)

Copies of this order shall be mailed to all counsel of record and unrepresented parties.

IT IS SO ORDERED.