DAVID M. ROGERS, APPELLANT, *v.*
THE STATE OF NEVADA, RESPONDENT.

No. 54913

June 2, 2011                                    255 P.3d 1264

---

*Diane R. Crow*, State Public Defender, and *James P. Logan*, Chief Deputy Public Defender, Carson City, for Appellant.

*Catherine Cortez Masto*, Attorney General, Carson City; *Neil A. Rombardo*, District Attorney, and *Gerald J. Gardner*, Assistant District Attorney, Carson City, for Respondent.

Before DOUGLAS, C.J., PICKERING and HARDESTY, JJ.

# OPINION

By the Court, PICKERING, J.:

David M. Rogers was convicted by a jury of driving under the influence of a controlled substance (marijuana) causing substantial

bodily harm, for which he was sentenced to serve 24 to 60 months in prison. Part of the evidence the jury heard came from a paramedic who took Rogers by ambulance to the hospital. The paramedic testified that Rogers confided that he had smoked marijuana before the accident. On appeal Rogers argues, as he did in the district court, that his statement to the paramedic was inadmissible because it was protected by Nevada's doctor-patient privilege.[1] We disagree and affirm.

## I.

As it happens, Rogers was already en route to the hospital when the traffic accident occurred. He had been mountain biking, fallen, and suffered a cut on his thigh near the femoral artery. Alone and wanting medical care, Rogers decided to drive himself to the hospital.

Upon reaching Carson City, Rogers drove into a busy intersection without braking, causing a seven-car pileup. The driver whose car Rogers hit first suffered serious injuries. When the police arrived, they found Rogers sitting on his car's tailgate applying a compress to his cut leg. He said he could not remember the collision and thought he had blacked out.[2] His car's airbags had deployed.

Among the first responders was firefighter/paramedic Jeff Friedlander. After speaking to Friedlander at the scene, Rogers went on to the hospital by ambulance with Friedlander attending him. During the trip, Friedlander asked Rogers if he had used drugs or alcohol that day. Rogers said "something to the effect of . . . 'I burned a joint on the trail, mountain biking.'" As an emergency medical technician (EMT), Friedlander routinely asks ambulance transport patients such questions. He testified that he did so in this case, not at the direction of the hospital or any doctor Rogers might see, but as normal triage for an independent EMT.

At the hospital Rogers consented to a blood test, which came back positive for marijuana. Earlier, Rogers had asked Friedlander

---

[1]Rogers also argues that errors in the jury instructions (concerning impairment and proximate cause) and prosecutorial misconduct (closing argument to the effect that repeating a story doesn't make it true) require reversal. Rogers did not preserve these issues by timely trial objection, and he fails to establish them as plain error on appeal. *Berry v. State*, 125 Nev. 282-83, 212 P.3d 1085, 1097 (2009) (unobjected-to jury instructions are reviewed for plain error), *abrogated on other grounds by State v. Castaneda*, 126 Nev. 478, 245 P.3d 550 (2010); *Valdez v. State*, 124 Nev. 1172, 1190, 196 P.3d 465, 477 (2008) (unobjected-to prosecutorial misconduct claim is reviewed for plain error). His cumulative error claim thus fails too. *Valdez*, 124 Nev. at 1195, 196 P.3d at 481.

[2]The State disputes Rogers' veracity and account of the accident. It maintains Rogers' marijuana use impaired his driving and depth perception and caused the accident.

not to tell the police about his marijuana use. Torn between his conflicting duties to Rogers and to the public, Friedlander sought advice from another EMT, who advised Friedlander to pass the information along to the Highway Patrol officer investigating the accident, which Friedlander did. Neither side argues that Friedlander sharing Rogers' admission with the Highway Patrol prompted the blood test.[3]

Rogers filed a pretrial motion in limine to keep his statement to Friedlander out of evidence based on the doctor-patient privilege. The district court denied the motion by written order in which it concluded "that an EMT paramedic does not fall within the Doctor-Patient Privilege" because the definition of "doctor" in NRS 49.215 "does not include a paramedic" and, further, that there was no "evidence to support that Mr. Friedlander was working under the direction of a doctor" in examining Rogers. After a two-day trial, the jury convicted Rogers of driving under the influence of a controlled substance causing substantial bodily harm.

## II.

Rogers bases his EMT- or paramedic-patient privilege claim on the doctor-patient privilege. The doctor-patient privilege did not exist at common law. 2 C. Mueller & L. Kirkpatrick, *Federal Evidence* § 5.42 (3d ed. 2010) (discussing Lord Mansfield's comments, in *Duchess of Kingston's Trial*, 20 Howell's State Trials 355, 573 (H.L. 1776), that a physician committed no indiscretion when he revealed communications between himself and his patient "in a court of justice"). Its existence and scope depend on statute. *Id.* In Nevada, the doctor-patient privilege is codified at NRS 49.215-.245.

NRS 49.225 states the general rule of doctor-patient privilege, as follows:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications among the patient, the patient's doctor or persons who are participating in the diagnosis or treatment under the direction of the doctor, including members of the patient's family.

Each of the privilege statute's key terms—"doctor," "patient," and "confidential" communication—has a specific, given definition.

---

[3]NRS 629.065 provides that health care records relating to a blood, breath, or urine test shall, upon request, be made available to a law enforcement agency or district attorney if the patient is suspected of having violated the laws against driving under the influence and that they are admissible as evidence in any related criminal proceeding.

" 'Doctor' means a person licensed to practice medicine, dentistry or osteopathic medicine in any state or nation, or a person who is reasonably believed by the patient to be so licensed, and in addition includes a person employed . . . as a psychiatric social worker." NRS 49.215(2). "Patient" is defined as "a person who consults or is examined or interviewed by a doctor for purposes of diagnosis or treatment." NRS 49.215(3). And a communication is "confidential" if "it is not intended to be disclosed to [unnecessary] third persons," *e.g.*, persons who are not "present to further the interest of the patient," "reasonably necessary for the transmission of the communication," or "participating in the diagnosis and treatment under the direction of the doctor, including members of the patient's family." NRS 49.215(1)(a)-(c).

There is little doubt that Rogers meant his statement to Friedlander about smoking marijuana to be "confidential." The problem is that "doctor," as defined in NRS 49.215(2), does not include EMTs or paramedics, while "patient" is defined in NRS 49.215(3) with reference to the defined term "doctor." Reading NRS 49.225 literally, the "doctor-patient" relationship required for the privilege to attach did not arise simply by virtue of Rogers, a person en route by ambulance to a hospital, speaking to Friedlander, an EMT/paramedic, in confidence.

The doctor-patient privilege is "intended to inspire confidence in the patient" and encourage candor in making a full disclosure so the best possible medical care can be given. *Hetter v. District Court*, 110 Nev. 513, 516, 874 P.2d 762, 763 (1994). Rogers argues that the same need for candor and trust that justify the doctor-patient privilege exists in the first responder and ambulance transport settings. *But see* Daniel M. Roche, Comment, *Don't Ask, Don't Tell: HIPAA's Effect on Informal Discovery in Products Liability and Personal Injury Cases*, 2006 BYU L. Rev. 1075, 1077 (2006) (noting that "the policy implications of the physician-patient privilege are weakened in an emergency response context [because] EMTs and paramedics do not usually have a continuing relationship with patients, nor are they particularly sought out or chosen by patients"). However, testimonial privileges like the doctor-patient privilege come at a price. They "are in derogation of the search for truth," *United States v. Nixon*, 418 U.S. 683, 710 (1974), *cited in Ashokan v. State, Dep't of Ins.*, 109 Nev. 662, 668, 856 P.2d 244, 247 (1993), "contraven[e] . . . the fundamental principle that 'the public . . . has the right to every man's evidence,' " *Jaffee v. Redmond*, 518 U.S. 1, 19 (1996) (Scalia, J., dissenting) (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)), and often their "benefits are, at best, 'indirect and speculative.' " *Whitehead v. Comm'n on Jud. Discipline*, 110 Nev.

380, 415, 873 P.2d 946, 968 (1994) (quoting *In re Grand Jury Investigations*, 599 F.2d 1224, 1235 (3d Cir. 1979)). For these reasons, this court has consistently held that statutory privileges should be construed narrowly, according to the "plain meaning of [their] words." *Ashokan*, 109 Nev. at 670, 856 P.2d at 249 (hospital peer review privilege construed narrowly); *McNair v. District Court*, 110 Nev. 1285, 1288, 885 P.2d 576, 578 (1994) (accountant-client privilege construed narrowly); *Whitehead*, 110 Nev. at 414-15, 873 P.2d at 968 (attorney-client and work product privileges construed narrowly); *see State v. Fouquette*, 67 Nev. 505, 536-37, 221 P.2d 404, 420-21 (1950) (construing a predecessor version of NRS 49.225 narrowly; holding that the physician-patient privilege provided in Nevada Compiled Laws § 8974 (1949) was limited to physicians or surgeons actually licensed to practice medicine in Nevada).

The Legislature recognizes and regulates EMTs as professionals whose services are "necessary for the health and safety of the people of Nevada." NRS 450B.015; *see* NRS Chapter 450B. Over the years, the Legislature has expanded the definition of "doctor" for purposes of the doctor-patient privilege from the narrow Nevada-licensed "physician or surgeon" definition set forth in *Fouquette*, 67 Nev. at 536-37, 221 P.2d at 420-21, to encompass any person licensed or reasonably believed to be licensed under the laws of any state or nation to practice medicine, dentistry, or osteopathy, or who is employed as a psychiatric social worker. NRS 49.215(2). Despite this expansion, the Legislature has not included EMTs or paramedics in NRS 49.215(2)'s definition of "doctor." As first responders, EMTs see and hear things that later witnesses can only surmise or reconstruct. Applying the narrow construction conventional to this court's interpretation of testimonial privilege statutes, we conclude that the doctor-patient privilege in NRS 49.225 does not apply to communications between an EMT or paramedic and patient when those communications do not occur in the presence, or at the direction, of a doctor, as defined in NRS 49.215(2). *Accord Med-Express, Inc. v. Tarpley*, 629 So. 2d 331, 332 (La. 1993) (because "ambulance technicians [are] not 'physician[s]' as [defined by statute], there is no privilege"); *State v. LaRoche*, 442 A.2d 602, 603 (N.H. 1982) ("[t]he statute . . . by its terms, applies only to physicians and surgeons and those working under their supervision[; s]ince EMT's are not physicians or surgeons, and there was no evidence that the EMT's were working under the supervision of a physician or surgeon, the privilege cannot protect the defendant's admission in the ambulance"); *State v. Ross*, 947 P.2d 1290, 1292 (Wash. Ct. App. 1997) (a privilege statute covering statements "to physicians, surgeons, or osteopathic physi-

cians or surgeons'' does cover communications to a ''responding paramedic'').[4]

Accepting arguendo that ''doctor'' as defined in NRS 49.215(2) does not include EMTs, Rogers makes a further argument: His statement to Friedlander is privileged under NRS 49.225, he claims, because that statute protects as privileged all communications ''among the patient, the patient's doctor *or persons who are participating in the diagnosis or treatment under the direction of the doctor*, including members of the patient's family.'' (Emphasis added.) By law, EMTs are regulated by the State or District Board of Health. NRS 450B.120. As an EMT, Friedlander worked under the auspices of a medical director who established the protocols to be followed in the field. NAC 450B.505(2)-(3). From this Rogers concludes that Friedlander was acting ''under the direction of a doctor''—the medical director under whose auspices he worked as an EMT/paramedic/firefighter—thereby qualifying his statement as privileged under NRS 49.225.

Rogers' argument misreads NRS 49.225 by substituting ''a'' for ''the'' in its reference to ''the patient, the patient's doctor or persons who are participating in the diagnosis or treatment under the direction of *the* doctor . . . .'' The relationship the statute fosters is that between the patient and the patient's doctor. Communications among the patient, the patient's doctor, or persons acting ''under the direction of the doctor'' are privileged but only when the third person is participating ''under the direction'' of the patient's doctor. While ''patients who are being treated by a physician should be entitled to trust someone who works under the close supervision of the physician to the same degree that they can trust the physician,'' such as a doctor's on-staff nurse, the statutory privilege does not by its terms extend to third persons not working under the doctor's close supervision, such as an independent EMT. *Darnell v. State*, 674 N.E.2d 19, 21-22 (Ind. Ct. App. 1996); *see State v. Gubitosi*, 886 A.2d 1029, 1041-42 (N.H. 2005) (the statutory physician-patient privilege is construed ''quite strictly'' and does not apply ''to emergency medical technicians because they do not work under the supervision of a physician or surgeon as required by the statute'' (quotation omitted)); Edward J. Imwinkelried, *The New Wigmore: A Treatise on Evidence: Evidentiary Privileges* § 6.9.1 (2d ed. 2010) (''[a]lthough on balance the definitions under the medical privileges are expansive, they are not boundless'' and do not apply ''in most jurisdictions . . . to paramedics acting independently of any physician'').

---

[4]Other courts have reached the same conclusion in unpublished dispositions. *State v. Gates*, No. 09-1241, 2010 WL 2598334, at *5 (Iowa Ct. App. Jun. 30, 2010) (publication decision pending); *State v. Barrett*, No. CA2003-10-261, 2004 WL 2340658, at *8 (Ohio Ct. App. Oct. 18, 2004).

Here, as the district court found, Friedlander was acting as an independent EMT. There was no doctor present at the scene and Friedlander was not acting under the supervision or direction of a doctor in a doctor-patient relationship with Rogers. Accepting Rogers' argument that, because an EMT is required by law to report to a medical director, this makes communications between an injured person and an EMT privileged would in effect expand the doctor-patient relationship to cover all EMT-patient communications and ignore the plain language in NRS 49.225. We recognize that a policy argument can be made that people who receive EMT services should enjoy the protections of the doctor-patient privilege for communications between them and the first responders. *See People v. Mirque*, 758 N.Y.S.2d 471, 477 (Crim. Ct. 2003) ("A patient bound for the hospital by ambulance should not be required to master the rules of agency before speaking freely"; extending New York's physician-patient privilege to reach a patient's statement to an EMT); *contra People v. Ackerson*, 566 N.Y.S.2d 833, 834 (County Ct. 1991). However, we cannot ignore the substantial competing concern with availability of evidence, particularly in the first-responder setting.[5] It is for "the Legislature, not the court, . . . to extend the literal language of the [doctor-patient] privilege [statute] to include paramedics." *Ross*, 947 P.2d at 1293; *Darnell*, 674 N.E.2d at 22 ("were we to recognize that all communications between [emergency responders] and patients were privileged, we would be limiting the amount of testimony which could be offered at trial and, thereby, impeding the search for truth," a "policy decision[ best left] to the legislature"); *see also* NRS 49.015(1) (providing that there are no testimonial privileges other than those required by the United States or Nevada Constitutions or provided by statute).

As the proponent of the privilege, Rogers bore the burden of establishing it. *McNair*, 110 Nev. at 1289, 885 P.2d at 579. He failed to meet that burden, and his other assignments of error also fail, *supra* note 1. We therefore affirm.

DOUGLAS, C.J., and HARDESTY, J., concur.

---

[5]Many of the cases addressing EMT-privilege or paramedic-privilege claims have arisen in the context of prosecutions for driving under the influence of drugs or alcohol. *State v. Gates*, No. 09-1241, 2010 WL 2598334 (Iowa Ct. App. Jun. 30, 2010); *People v. Mirque*, 758 N.Y.S.2d 471 (Crim. Ct. 2003); *State v. Barrett*, No. CA2003-10-261, 2004 WL 2340658 (Ohio Ct. App. Oct. 18, 2004); *State v. Ross*, 947 P.2d 1290 (Wash. Ct. App. 1997).