**131 Nev., Advance Opinion 21**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

RYAN MITCHELL, D.O.,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
KENNETH C. CORY, DISTRICT
JUDGE,
Respondents,
   and
ALEC BUNTING, BY AND THROUGH
HIS GUARDIAN AD LITEM, STELLA
RAVELLA; AND STELLA RAVELLA,
INDIVIDUALLY,
Real Parties in Interest.

No. 63076

**FILED**

APR 3 0 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus directing the district court to sustain the privileges asserted by a defendant doctor in a medical malpractice case as to his personal counseling and treatment records.

*Petition granted in part and denied in part.*

Mandelbaum, Ellerton & McBride and Sarah Marie Ellerton, Kim Irene Mandelbaum, and Robert C. McBride, Las Vegas,
for Petitioner.

The Law Office of Daniel S. Simon and Daniel S. Simon, Las Vegas,
for Real Parties in Interest.

BEFORE THE COURT EN BANC.

SUPREME COURT
OF
NEVADA

(O) 1947A

7/21/15: Corrected per letter to publishers. CJ

15-13100

*OPINION*

By the Court, PICKERING, J.:

This is a medical malpractice case in which the doctor defendant, petitioner Ryan Mitchell, seeks an extraordinary writ directing the district court to protect as privileged counseling and medical records relating to his substance abuse. We conditionally grant the writ. Mitchell's family and marital therapy records are privileged, and his doctor-patient records, though subject to the patient-litigant exception in NRS 49.245(3), should have been reviewed in camera by the district court and appropriate limitations placed on their use before discovery of all or any part of them was allowed.

I.

Alec Bunting experienced heart problems following a tonsillectomy performed by Dr. Mitchell. Bunting's guardian ad litem, Stella Ravella, sued Mitchell and Mitchell's employer for medical malpractice and negligent hiring and supervision, respectively. Ravella's complaint alleges that Mitchell's misadministration of anesthesia during the surgery caused then-seven-year-old Bunting's heart to fail. Bunting survived, but his heart now beats with the help of a pacemaker.

In deposition, Mitchell admitted that at the time he operated on Bunting he was addicted to Ketamine and Valium, which he had abused intermittently for years. Mitchell denies operating on Bunting—or any patient—while under the influence of drugs or alcohol. But, three months after Bunting's tonsillectomy, Mitchell was arrested for domestic violence while high on drugs, and three months after that, Mitchell was arrested for driving under the influence. Mitchell was convicted of both offenses. He disclosed in deposition that, after his arrests, he and his wife

pursued marriage counseling and that he was treated for substance abuse by two different doctors, first on an outpatient, then on an inpatient basis.

Ravella posits that Mitchell was impaired when he operated on Bunting and that Mitchell's employer should have recognized his addictive behavior and prevented him from treating patients. Seeking support for her position, Ravella subpoenaed Mitchell's counseling and substance abuse treatment records. Mitchell objected, citing the doctor-patient and family therapist-client privileges. The district court overruled Mitchell's privilege claims. It held that Ravella's claims and Mitchell's and his employer's defenses to them placed Mitchell's drug addiction in issue in the litigation, thereby terminating the privileges that originally attached to his communications with his doctors and with his and his wife's family therapist.[1]

## II.

The law reserves extraordinary writ relief for situations "where there is not a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170 (mandamus); NRS 34.330 (prohibition). Because most discovery rulings can be adequately reviewed on appeal from the eventual final judgment, extraordinary writs "[g]enerally . . . are not available to review discovery orders." *Clark Cnty. Liquor & Gaming*

---

[1]This is Mitchell's second writ petition. Argument on the first petition was canceled after Mitchell's bankruptcy triggered the automatic stay in 11 U.S.C. § 362. After a series of reports on the bankruptcy case, we dismissed the first petition without prejudice to avoid having it linger indefinitely on the docket. When Ravella obtained relief from the bankruptcy stay, she returned to district court, which again denied Mitchell's privilege claims, prompting this second writ proceeding. A three-judge panel heard argument on the petition, then transferred it to the en banc court pursuant to IOP 13(b).

*Licensing Bd. v. Clark*, 102 Nev. 654, 659, 730 P.2d 443, 447 (1986). But when a discovery order directs disclosure of privileged information, a later appeal may not be an effective remedy. *Wardleigh v. Second Judicial Dist. Court*, 111 Nev. 345, 350-51, 891 P.2d 1180, 1183-84 (1995) ("If improper discovery were allowed, the assertedly privileged information would irretrievably lose its confidential and privileged quality and petitioners would have no effective remedy, even by a later appeal."); *see Hetter v. Eighth Judicial Dist. Court*, 110 Nev. 513, 515, 874 P.2d 762, 763 (1994). Thus, we have occasionally granted extraordinary writ relief from orders allowing pretrial discovery of privileged information, especially when the petition presents an unsettled and important issue of statutory privilege law. *Diaz v. Eighth Judicial Dist. Court*, 116 Nev. 88, 93, 993 P.2d 50, 54 (2000); *Ashokan v. State, Dep't of Ins.*, 109 Nev. 662, 667, 856 P.2d 244, 247 (1993).

Our cases do not address whether and, if so, how the at-issue waiver doctrine and/or the patient-litigant exception to the doctor-patient and family therapist-client privileges apply when it is the defendant who claims the privilege and the plaintiff who has put the defendant's physical or mental condition in issue. And, without writ relief, compelled disclosure of Mitchell's assertedly privileged communications will occur before a final appealable judgment is reached.[2] Together, these

---

[2]Although one of Mitchell's doctors produced his records before Mitchell could object, Mitchell asks that, if we sustain his privilege claims, we direct the district court to enter an order in limine prohibiting reference to the produced records at trial and requiring that all copies of the records be returned to Mitchell or destroyed. The other two providers have yet to produce their records, as the district court's production order has been stayed.

considerations persuade us that our intervention by way of extraordinary writ is appropriate in this matter.

## III.

NRS 49.225 and NRS 49.247 protect as privileged confidential communications between a patient and his doctor and between clients and their marriage and family therapist. These privileges initially attached to Mitchell's doctor-patient and marriage and family therapist-client communications. The question we face is whether these confidential communications lost their privileged status when Mitchell's drug addiction became relevant to Ravella's malpractice and negligent hiring and supervision claims. This is a legal question that we decide de novo, without deference to the district court. *See Las Vegas Sands Corp. v. Eighth Judicial Dist. Court*, 130 Nev. Adv. Op. No. 69, 331 P.3d 905, 909-10 (2014). Since the analysis differs for the two privileges, we discuss them separately, taking the doctor-patient privilege first.

### A.

A patient who voluntarily puts his physical or mental condition in issue in a lawsuit loses the protection of the doctor-patient privilege for communications with his doctor about that condition. 1 Kenneth S. Broun et. al, *McCormick on Evidence* § 103, at 631 (7th ed. 2013). Variously referred to as waiver by placing in issue or the in-issue or at-issue waiver doctrine, this judicially developed rule promotes fairness, *see* 8 John Henry Wigmore, *Evidence* § 2388, at 855 (McNaugton rev. 1961), and discourages abuse of the privilege; it "prevents the patient from putting his physical or mental condition in issue and then asserting the privilege to prevent an adversary from obtaining evidence that might rebut the patient's claim." 25 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure: Evidence* § 5543, at 320

Supreme Court
OF
Nevada

(O) 1947A

5

(1989). Today, many states, including Nevada, have amended their doctor-patient privilege statutes to create an express patient-litigant exception that, depending on the form of the exception statute, directs the same or a similar result as the at-issue waiver doctrine. *See* NRS 49.245(3); Edward J. Imwinkelried, *The New Wigmore: Evidentiary Privileges* § 6.13.3 (2d ed. 2014).

### 1.

Citing out-of-state case law, *e.g.*, *Chung v. Legacy Corp.*, 548 N.W.2d 147 (Iowa 1996); *Shamburger v. Behrens*, 380 N.W.2d 659 (S.D. 1986), Mitchell insists that neither the at-issue waiver doctrine nor the patient-litigant exception properly applies unless the patient is the one who puts his physical or mental condition in issue. And, indeed, this is the law stated in *Chung, Shamburger*, and other like cases. *See also* NRS 49.385 (providing that a privilege is waived if the holder "voluntarily discloses or consents to disclosure of any significant part of the [privileged] matter"). If the holder of the privilege denies a litigation adversary's allegations about his physical or mental condition, he has not voluntarily put his condition in issue. Since waiver requires an affirmative, voluntary act by the holder of the claim or right to be waived, *see Mill-Spex, Inc. v. Pyramid Precast Corp.*, 101 Nev. 820, 822, 710 P.2d 1387, 1388 (1985) ("[W]aiver is the intentional relinquishment of a known right."), such forced denials normally do not waive the privilege. *See* Broun, *supra*, § 103, at 633 ("With respect to defenses, a distinction is clearly to be seen between the allegation of a physical or mental condition, which will effect the waiver [of the doctor-patient privilege], and the mere denial of such a condition asserted by the adversary, which will not."); *see also Leavitt v. Siems*, 130 Nev. Adv. Op. No. 54, 330 P.3d 1, 7 (2014) ("Bringing a claim for personal injury or medical malpractice results in a limited waiver of

the physician-patient privilege with regard to directly relevant and essential information necessary to resolve the case.").

Mitchell did not place his drug addiction in issue in the underlying malpractice suit; Ravella did. Analyzed purely as a matter of waiver, Mitchell's doctor-patient privilege thus remains intact and is not affected by Ravella's malpractice and negligent supervision claims. But our analysis does not end with the at-issue waiver doctrine. We still must consider Nevada's statutory patient-litigant exception.[3]

## 2.

NRS 49.245(3) states the patient-litigant exception to Nevada's doctor-patient privilege as follows:

> There is no privilege under NRS 49.225 . . . [a]s to [communications][4] relevant to an issue of the

---

[3]Mitchell cites NRS 458.280 in support of his petition for writ relief, which provides that records created at an alcoholism and substance abuse treatment center are confidential and "must not be disclosed without consent of the patient." Mitchell did not make this argument in the district court and it is therefore waived. *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981).

[4]The current version of NRS 49.245(3) uses the phrase "written medical or hospital records," rather than the word "communications" that appeared in the original version of the statute. *Compare* 1971 Nev. Stat., ch. 402, § 53, at 785, *with* 1987 Nev. Stat., ch. 449, § 1, at 1036. This change was made in 1987 to prevent a defense lawyer from interviewing a personal injury plaintiff's doctor privately, without the plaintiff's counsel present. *See Leavitt*, 130 Nev. Adv. Op. No. 54, 330 P.3d at 7. The 1987 amendment does not affect the issues addressed in this opinion but does complicate their discussion. To facilitate comparison of Nevada's version of the patient-litigant exception with the model from which it was drawn and those enacted in other states, this opinion substitutes the original "communications" for "written medical or hospital records."

> condition of the patient in any proceeding in which
> the condition is an element of a claim or defense.

A plain reading of the statute's text does not support a requirement that the patient must place his condition in issue for the exception to terminate the privilege. Rather, the statute seems to say that, all other conditions being met—i.e., there is: a confidential communication; that is relevant; to an issue of the patient's condition; in a proceeding; in which the condition is an element of a claim or defense—the exception applies, regardless of who raised the claim or defense that triggered it.

Essentially, Mitchell treats NRS 49.245(3) as a codification of the at-issue waiver doctrine. He asks us to import into the statute a requirement that the patient must assert the condition-based claim or defense for the exception to apply. But we cannot enlarge the doctor-patient privilege by judicially narrowing one of its principal exceptions without running afoul of NRS 49.015, which constrains nonconstitutional privileges to those the Legislature has authorized. *Cf. Rogers v. State*, 127 Nev. Adv. Op. No. 25, 255 P.3d 1264, 1266 (2011) (Nevada's doctor-patient privilege depends on statute, not common law). And the sparse legislative history that exists does not support Mitchell's position. If anything, the historical context suggests its studied rejection.

Nevada adopted its current evidence code in 1971. *See* 1971 Nev. Stat., ch. 402. The Nevada Commission that was tasked with proposing a modern draft evidence code drew on the Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates submitted by the Advisory Committee on Federal Rules of

Evidence (Draft Federal Rules), *reprinted in* 46 F.R.D. 161 (1969).[5] *See* Legislative Commission of the Nevada Legislative Counsel Bureau, *A Proposed Evidence Code*, Bulletin No. 90, at 1 (Nev. 1970) [hereinafter Bulletin No. 90]. It also consulted the Model Rules of Evidence proposed by the National Conference of Commissioners on Uniform State Law and the ABA in 1953 (the Uniform Act), the California Evidence Code, and existing Nevada law. Bulletin No. 90 at 1. The Draft Federal Rules proposed to eliminate the general doctor-patient privilege altogether, for policy reasons. 46 F.R.D. at 259-60. In its place, Draft Federal Rule 5-04 offered a much narrower psychotherapist-patient privilege. *See id.* at 257-59. The Nevada Commission did not agree with eliminating the doctor-patient privilege, so it "adapted" the psychotherapist-patient privilege in Draft Federal Rule 5-04 by "enlarg[ing it] to embrace all doctors of medicine, dentistry and osteopathy as well as licensed psychologists." Bulletin No. 90, § 53, at 24 cmt.

Draft Federal Rule 5-04(d)(3) included a patient-litigant exception, as follows:

> There is no privilege under this rule as to communications relevant to an issue of the mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense, or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense.

---

[5]It was not until July 1, 1975, four years after Nevada adopted its evidence code, that the Federal Rules of Evidence went into effect. Act of Jan. 2, 1975, Pub. L. No. 93-595, 88 Stat. 1926.

46 F.R.D. at 259. Unlike NRS 49.245(3), Draft Federal Rule 5-04(d)(3) limited the patient-litigant exception to conditions on which the *patient* relied as an element of *his* claim or defense (except for a deceased patient's condition, on which any party's reliance terminates the privilege). To convert Draft Federal Rule 5-04(d)(3) to NRS 49.245(3) (1971) required the following changes to the former:

> There is no privilege under ~~this rule~~ [NRS 49.225] as to communications relevant to an issue of the ~~mental or emotional~~ condition of the patient ~~in any proceeding in which he relies upon the condition as an element of his claim or defense, or, after the patient's death,~~ in any proceeding in which ~~any party relies upon~~ the condition ~~as~~ [is] an element of ~~his~~ [a] claim or defense.

This comparison dispels any notion that the Nevada Legislature, through its Legislative Commission, meant but somehow forgot to limit the exception in NRS 49.245(3) to claims the patient initiated. On the contrary, it suggests that contemporary drafters knew how to limit the exception to patient-raised claims or defenses,[6] but that Nevada's evidence code authors, for whatever reason, chose a different path.

---

[6]The Uniform Act and California Evidence Code, which the Nevada Legislative Commission also consulted, *see* Bulletin No. 90 at 1, likewise limited their patient-litigant exceptions to claims or defenses the patient initiated. Uniform Act Rule 223(3) ("There is no privilege under Rule 221 in an action in which the condition of the patient is an element or factor of the claim or defense *of the patient* or of any party claiming through or under the patient." (emphasis added)); Cal. Evid. Code § 996(a) (West 2009) ("There is no [medical] privilege . . . as to a communication relevant to an issue concerning the condition of the patient if such issue has been tendered by . . . [t]he patient.").

Comparable differences in statutory text also distinguish *Shamburger* and *Chung*, referenced above as among Mitchell's primary authorities. Like Draft Federal Rule 5-04(d)(3) but unlike NRS 49.245(3), the patient-litigant exception considered in *Shamburger*, S.D. Codified Laws § 19-13-11 (1986), read: "There is no privilege under § 19-13-7 as to a communication relevant to an issue of the physical, mental or emotional condition of the patient in any proceeding in which he relies upon the condition as an element of his claim or defense or, after the patient's death, in any proceeding in which any party relies upon the condition as an element of his claim or defense." 380 N.W.2d at 662 n.4. And the exception in *Chung*, Iowa Code § 622.10 (1993), only applied in "a civil action in which the condition of the person in whose favor the [privilege runs] is an element or factor of the claim or defense of the person or of any party claiming through or under the person," 548 N.W.2d at 149. *Shamburger* and *Chung* thus do not offer much interpretive guidance, since the statutes they addressed *expressly* adopted the limitation Mitchell asks us to *imply* into NRS 49.245(3).

We have not found another patient-litigant exception exactly like Nevada's, but Texas's and Utah's are close. Tex. R. Evid. 509(e)(4) (2003) (the doctor-patient privilege does not apply if "any party relies upon the [patient's physical, mental, or emotional] condition as a part of the party's claim or defense [and the communication or record is relevant to that condition]"); Utah R. Evid. 506(d)(1) (2013) (no privilege exists "[f]or communications relevant to an issue of the physical, mental, or emotional condition of the patient: [(A)] in any proceeding in which that condition is an element of any claim or defense, or [(B)] after the patient's death, in any proceedings in which any party relies upon the condition as an

element of the claim or defense"). By dispensing with the requirement that the patient initiate the claim or defense, these statutes expand the patient-litigant exception and abrogate the patient's control over the privilege.

Even so, the exceptions are not unlimited. To terminate the privilege, the condition must be more than merely relevant to a litigated claim or defense; it must be a *part* (Texas) or an *element* (Nevada and Utah) of the claim or defense. Reading the exceptions as written, without requiring that the patient initiate the claim or defense to trigger them, thus does not reduce the privileges to the point of absurdity,[7] as Mitchell suggests. *See R.K. v. Ramirez*, 887 S.W.2d 836, 841-42 (Tex. 1994) (disapproving of cases holding that the patient must raise the claim to which the condition relates or the privilege would cease to exist; by its terms, the patient-litigant exception requires more than mere relevance of the condition to a claim or defense to trigger the exception); *State v. Worthen*, 222 P.3d 1144, 1151-52, 1158 (Utah 2009) (recognizing that "[i]f feelings themselves were to constitute a mental or emotional condition [for purposes of the rule], the exception to the psychotherapist-patient privilege would devour the privilege" but nonetheless concluding, on the record presented, that the victim's pathological hatred of her parents formed an element of the defendant's fabrication defense, subjecting the

---

[7]The anti-absurdity doctrine is usually invoked when a statute, as written, does not parse; it aides interpretation but "does not license courts to improve statutes (or rules) substantively, so that their outcomes accord more closely with judicial beliefs about how matters ought to be resolved." *Jaskolski v. Daniels*, 427 F.3d 456, 461 (7th Cir. 2005).

victim's therapy records to in camera review and carefully circumscribed disclosure).

Mitchell protests that it is unfair and bad policy to allow Ravella to gain access to his doctor-patient records based on claims she alone raised. But from Ravella's perspective, it is equally unfair to allow Mitchell to suppress evidence by claiming a privilege to which the patient-litigant exception, as written in Nevada, applies. As a policy matter, the debate is not as one-sided as Mitchell assumes.

> While it is true that the defendant did not have "the litigating initiative", it may be the case that his or her out-of-court behavior is what triggered the lawsuit. . . . Is not a person who says "I was not drunk at the time I operated on the plaintiff" and then claims the privilege to prevent inquiry into his alcoholism as much abusing the privilege as the plaintiff who seeks to close his physician's mouth while asserting serious injury? . . . It is only when one assumes that the person seeking to destroy the status quo is in the poorer moral status than the person allegedly responsible for the status quo that the policy argument for defensive use of the privilege takes on much power. At least the contrary arguments are strong enough to suggest why some people have favored a "qualified" exception that would permit the court to see what justice requires before applying the exception.

Wright & Graham, *supra*, § 5543, at 328 n.65.

The policy lines here were drawn by the Legislature, which omitted any requirement that the patient make an issue of his condition for the patient-litigant exception to apply. We decline to read into NRS 49.245(3) a limitation it does not state.

3.

Regardless of who raised the issue of the patient's condition, for the patient-litigant exception to apply, the party seeking to overcome the privilege still must show that the "condition of the patient" is *"an element of a claim or defense"* in the proceeding. NRS 49.245(3) (emphasis added). The term "element" is not defined in NRS Chapter 49. Generally, an "element" of a claim is a "part of a claim *that must be proved for the claim to succeed." Black's Law Dictionary* 559 (8th ed. 2004) (emphasis added); *see* Wright & Graham, *supra*, § 5543, at 330 ("Though 'element' is not defined, the term is usually used to refer to those fundamental assertions of fact that were required to be pleaded under the old system of code pleading." (footnote omitted) (discussing the successor to Draft Federal Rule 5-04(d)(3))).

Relevance alone does not make a patient's condition an element of a claim or defense. At minimum, the patient's condition must be a fact "to which the substantive law assigns significance." *Ramirez*, 887 S.W.2d at 842 (applying the more expansive "part" of a claim or defense requirement of Tex. R. Evid. 509(d)). A defendant who pleads not guilty by reason of insanity, for example, has asserted a defense that has, as one of its elements, his insanity. *See* Wright & Graham, *supra*, § 5543, at 330-31. Similarly, a disinherited child who challenges her father's will on the grounds he was incompetent has asserted a claim about her father's condition to which legal consequences attach: If proved, the condition alleged invalidates the will. *Ramirez*, 887 S.W.2d at 842-43. In both instances, the patient's condition is an *element* of the claim or defense—not merely *relevant*—because the claim or defense fails unless the condition asserted is established in fact.

Mitchell's drug addiction is not an element of Ravella's malpractice claim against him. To establish medical malpractice a plaintiff must show that: "(1) . . . the doctor's conduct departed from the accepted standard of medical care or practice; (2) . . . the doctor's conduct was both the actual and proximate cause of the plaintiff's injury; and (3) . . . the plaintiff suffered damages" as a result. *Prabhu v. Levine*, 112 Nev. 1538, 1543, 930 P.2d 103, 107 (1996). Ravella counts Mitchell's drug addiction as an element of her malpractice claim because his "mental, emotional and physical condition contributed to his negligence and falling below the standard of care." This argument misses the mark. Of legal consequence to a medical malpractice claim is *whether* the practitioner's conduct fell below the standard of care, not *why*. *See Ramirez*, 887 S.W.2d at 845 (Enoch, J., dissenting). Put another way, Ravella wins if she shows that Mitchell's misadministration of the anesthetic fell below the standard of care and caused Bunting's injuries; legally, Mitchell's diminished capacity doesn't matter. While Mitchell's drug addiction may be relevant to, it is not an element of, Ravella's medical malpractice claim.[8]

We reach the opposite conclusion with respect to Ravella's negligent hiring and supervision claims. Unlike her malpractice claim against Mitchell, Ravella's negligent hiring and supervision claims against his employer require her to establish that the clinic knew or should have known that Mitchell was unfit for the position he held. *See Hall v. SSF, Inc.*, 112 Nev. 1384, 1392-93, 930 P.2d 94, 99 (1996). For purposes of NRS

---

[8]Ravella also argues that Mitchell's drug addiction is an element of Mitchell's defense that he exercised due care. But just as Ravella need not prove Mitchell's addiction to show his breach, Mitchell need not disprove it to show that he met the requisite standard of care.

49.245(3), this makes Mitchell's condition an *element* of Ravella's negligent hiring and supervision claims. *See Hosey v. Presbyterian Church (U.S.A.)*, 160 F.R.D. 161, 163-64 (D. Kan. 1995) (holding that a deceased priest's pedophilia, for which he received psychiatric treatment, was an element of a plaintiff's negligent hiring and supervision claim against the church that employed him; thus, the patient-litigant exception terminated the doctor-patient privilege (similar to Draft Federal Rule 5-04(d)(3), Kansas law dispensed with the requirement that the patient initiate the claim for the exception to apply if the patient was deceased)); *see also Ramirez*, 887 S.W.2d at 843-44 (holding that the Texas patient-litigant exception terminated the doctor-patient privilege as to communications relevant to a doctor's unfitness in a case alleging that the defendant hospital and clinic "knew or should have known of the [doctor's] condition and because of that condition should have supervised him better or not selected him at all").

4.

Although not limited to patient-initiated claims or defenses, the Nevada patient-litigant exception demands close scrutiny when the claim or defense triggering it is asserted by or on behalf of someone other than the patient. A patient presumably will not base a claim or defense on his physical or mental condition unless that condition in fact exists. A stranger to the doctor-patient relationship, by contrast, may be tempted to speculate as to the physical or mental condition of his or her adversary, especially if that will open the door to embarrassing or painful revelations. To invoke the patient-litigant exception, therefore, the nonpatient must establish a basis in fact for the district court to conclude that the condition exists and is an element of a legitimate claim or defense. *Cf. Worthen*, 222 P.3d at 1149-50 (a nonpatient must demonstrate to a "reasonable certainty" that the records sought contain evidence material to the claim

SUPREME COURT
OF
NEVADA

(O) 1947A

16

or defense asserted for the district court to proceed with an in camera review of them).

Ravella's charge that Mitchell was in the throes of active substance abuse at the time he operated on Bunting goes well beyond speculation. Mitchell's arrests, convictions, and admissions in deposition sufficiently establish his addiction and its temporal proximity to the surgery to have justified the district court in undertaking an in camera review of the medical records relating to Mitchell's treatment for substance abuse to determine which should be made available to Ravella and the conditions appropriate to their production. *Ramirez*, 887 S.W.2d at 843 (after a prima facie showing is made that the nonpatient has fairly invoked the exception, the district court should undertake an in camera review of the medical records to "ensure that the production of documents ordered, if any, is no broader than necessary, considering the competing interests at stake"); *see Worthen*, 222 P.3d at 1156 (in camera review appropriate to restrict production of unprivileged but nonetheless private documents); *see also* NRCP 26(c) ("Upon motion by a party or by the person from whom discovery is sought, . . . the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.").

Mitchell and Ravella litigated the privilege issues in this case on an all-or-nothing basis in the district court. Not surprisingly, therefore, the district court did not conduct an in camera review of the medical records relating to Mitchell's substance abuse treatment. We therefore conditionally grant the writ and direct the district court to review the

doctor-patient records in camera and enter such orders respecting their production and use as are consistent with this opinion.

## B.

No basis exists, however, to overcome the privilege that attached to Mitchell's and his wife's confidential communications with their marital and family therapist under NRS 49.247. Neither Mitchell nor his wife put their counseling sessions in issue in the litigation by Ravella against Mitchell and Mitchell's employer. The at-issue waiver doctrine, therefore, does not apply, for the same reasons it does not apply to Mitchell's medical records. And, while NRS 49.249(4) creates a client-litigant exception to the marital and family therapist-client privilege provided in NRS 49.247, that exception is much narrower than the patient-litigant exception in NRS 49.245(3). It provides simply that "[t]here is no privilege under NRS 49.247 . . . [a]s to communications relevant to an issue of *the treatment* of the client in any proceeding in which the treatment is an element of a claim or defense." (Emphasis added.) No issue respecting the treatment provided by the Mitchells' marital and family therapist is implicated, much less an element of a claim or defense, in this case. For that reason, the exception does not apply and the district court is ordered to grant a protective order interdicting discovery of the Mitchells' marriage and family therapy sessions.

We therefore issue a writ of mandamus directing the district court to rescind its order rejecting the claims of privilege in this case, to protect as privileged the confidential communications between the Mitchells and their marital and family therapist, and to proceed

as outlined in this opinion as to the doctor-patient communications and records.

                                                 _____, J.
                                            Pickering

We concur:

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Gibbons

DOUGLAS, J., concurring in part and dissenting in part:

I join the majority opinion except as to the discussion in section III(A)(3) respecting Mitchell's addiction as an element of Ravella's malpractice claim against him pursuant to NRS 49.245(3). In my view, the majority's reading and interpretation of NRS 49.245(3) and *Prabhu v. Levine*, 112 Nev. 1538, 930 P.2d 103 (1996), is too strident of an application.

In this case, Mitchell admitted that at the time he operated on Bunting he was addicted to Ketamine and Valium, which he had abused intermittently for years. However, Mitchell denies operating on Bunting—or any patient—while under the influence of drugs or alcohol. But, three months after Bunting's tonsillectomy, Mitchell was arrested for domestic violence while high on drugs, and three months after that, Mitchell was arrested for driving under the influence. Mitchell was convicted of both offenses. He disclosed in the deposition that, after his arrests, he and his wife were treated for substance abuse. Additionally, Ravella's charge that Mitchell was in the throes of active substance abuse at the time he operated on Bunting goes well beyond speculation. Mitchell's arrests, convictions, and admissions in deposition sufficiently establish his addiction and its temporal proximity to the surgery to have justified the district court in undertaking an in camera review of the medical records relating to Mitchell's treatment for substance abuse to determine which should be made available to Ravella and the conditions appropriate to their production. *R.K. v. Ramirez*, 887 S.W.2d 836, 843 (Tex. 1994) (after a prima facie showing is made that the nonpatient has fairly invoked the exception, the district court should undertake an in camera review of the medical records to "ensure that the production of

documents ordered, if any, is no broader than necessary, considering the competing interests at stake").

I submit that Mitchell's admitted addiction is relevant and should be considered as an element of Ravella's malpractice claim as to whether it contributed to his negligence and whether his conduct fell below the standard of care. This made Mitchell's addiction an element of Ravella's direct malpractice claim against him and independently justified the discovery she sought, with or without the added negligent supervision or hiring claim against Mitchell's employer. Almost the identical issue confronted the Texas Supreme Court in *Ramirez*, where, construing Texas's comparable patient-litigant exception statute, the majority held that the direct malpractice claim against the addicted doctor triggered application of the patient-litigant exception. *Ramirez*, 887 S.W.2d at 838, 844. I recognize that Texas uses "part" instead of "element" of the claim or defense in its statute, but to me that is a distinction without a difference. Concern for the addicted doctor's privilege and privacy interests is accommodated by requiring in camera review of the documents pre-production, and the fashioning of a protective order, if appropriate, under NRCP 26(c) before their production is ordered. Rather than parse between the elements of the malpractice and negligent hiring/supervision claims, I would hold that the patient-litigant exception is triggered by Ravella's claims against Mitchell and his employer and let the in camera review and protective order afford the safeguards to prevent abuse of the exception.



_____, J.
Douglas

SUPREME COURT
OF
NEVADA

(O) 1947A

SAITTA, J., dissenting:

I dissent.

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A