OPINION OF THE COURT
Ethan Greenberg, J.
The emergency medical technicians of New York City’s Emergency Medical Service perform crucial and sometimes heroic *376 work. Typically, an emergency medical technician (or EMT) is the first medical professional to assist a person who has fallen victim to sudden illness or serious accident. It is no exaggeration to say that an EMT often makes the difference between life and death.
Part of the EMT’s job is to talk to the patient, to gather information from the patient, and to report that information to the nurses and doctors at the hospital for their use in further treating the patient. The EMT’s ability to get full and truthful information from the patient can be especially important in those cases where the patient loses consciousness before reaching the hospital. Such a patient cannot speak for himself to the hospital staff. Rather, both the patient and the hospital staff responsible for his life and health must rely upon the EMT’s report.
In view of these considerations, and for the reasons detailed below, the court finds that under appropriate circumstances communications between patients and EMT’s are subject to the health care professional’s privilege created by CPLR 4504.
Facts
Just before 4:00 a.m. on April 21, 2001, the defendant Charles Mirque was involved in a serious car accident. His Jeep collided with a car driven by Irving Maynard. The Jeep slammed into a pillar supporting an elevated train track. Defendant’s nephew was a passenger in defendant’s Jeep. The nephew was knocked unconscious and pinned inside the Jeep. The fire department ultimately extracted the nephew from the Jeep using the “jaws of life.”
Defendant Mirque was luckier. He suffered less serious injuries, the worst being a gash on his forehead. EMT Elizabeth Sturdivant (along with a partner) removed defendant from his Jeep, placed him on a stretcher, immobilized his head and neck with a cervical “collar,” and transported defendant by ambulance from the scene to a hospital.
While Ms. Sturdivant was loading the defendant into the ambulance, she noticed a strong odor of alcohol on his breath. One of her duties as an EMT for New York City’s Emergency Medical Service (EMS) was to fill out a standardized ambulance call report. That report summarizes the information gathered by the EMT concerning the patient’s medical condition. The EMT is required to give the completed report to *377 the triage nurse at the hospital immediately upon arrival there. The report form includes a space for the EMT to note whether or not the patient has recently ingested alcohol. Ms. Sturdivant asked the defendant once he was inside the ambulance whether he had been drinking. Defendant replied that he had. This information was reflected in Ms. Sturdivant’s ambulance call report.
Police officers followed the defendant’s ambulance to the hospital. Police Officer Dina DiPasquale spoke briefly to the defendant at the hospital. She too noticed the strong smell of alcohol on defendant’s breath. She asked the defendant whether he had been drinking. Defendant said that he had had two drinks. Defendant refused to take a “breathalyzer” test. Officer DiPasquale then arrested defendant at the hospital. Defendant became belligerent, cursing everyone in the vicinity at length.
Defendant was charged with driving while intoxicated (Vehicle and Traffic Law § 1192 [3]), reckless driving (Vehicle and Traffic Law § 1212), and reckless endangerment (Penal Law § 120.20). Some months prior to trial a combined Huntley / Dunaway ¡Johnson hearing was scheduled to decide whether the evidence that defendant had refused to take the breathalyzer test and that he had made admissions to the police concerning his drinking would be admitted at trial. (See Vehicle and Traffic Law § 1194 [2] [f]; People v D’Angelo, 244 AD2d 788 [3d Dept 1997].) The People produced the wrong police officers as witnesses for that hearing. Accordingly, after the hearing a Judicial Hearing Officer recommended that the motion to suppress be granted. That recommendation was subsequently adopted by another judge of this court, and that evidence was suppressed.
The case came on for trial on February 5, 2003. Immediately prior to trial the defendant made an oral motion in limine. The motion sought to exclude at trial the evidence that defendant had admitted to EMT Elizabeth Sturdivant that he had been drinking. Defendant asserted that the statement was privileged pursuant to CPLR 4504. (The motion was particularly important in this case in view of the prior order suppressing evidence of defendant’s admissions to the police and of his refusal to submit to the breathalyzer test.)
A brief pretrial hearing was conducted on the motion in limine. At that hearing EMT Sturdivant explained her role and duties as an EMT, and she described defendant’s statement and the circumstances surrounding it.
*378 After consideration, the court granted the motion for the reasons more fully explained below. The court held that EMT Sturdivant would be permitted to testify as to her observations of the defendant’s condition — including the strong smell of alcohol on his breath — but not as to her discussion with the defendant about his drinking.
Defendant subsequently waived his right to a jury trial. After a bench trial defendant was found guilty of a single count of driving while impaired (Vehicle and Traffic Law § 1192 [1]).
Law
The Health Care Professional’s Privilege
CPLR 4504 codifies what is sometimes referred to as the health care professional’s privilege. (See M. Martin, New York Evidence Handbook § 503 [2d ed 2002].) The statute provides in relevant part:
“(a) Confidential information privileged. Unless the patient waives the privilege, a person authorized to practice medicine, registered professional nursing, licensed practical nursing, dentistry, podiatry, or chiropractic shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.”
The physician-patient and related health care professional’s privilege embodied in CPLR 4504 is designed to encourage candor between patient and physician so that proper care can be given, to make it unnecessary for a physician to choose between the duty to honor a patient’s confidences and the duty to give evidence in court, and to protect a patient’s privacy. (Dillenbeck v Hess, 73 NY2d 278, 285-286 [1989].) The privilege should be given a broad and liberal construction in order to carry out these purposes. (Matter of Grand Jury Investigation of Onondaga County, 59 NY2d 130, 134 [1983]; People v Decina, 2 NY2d 133, 143 [1956].)
CPLR 4504 does not include emergency medical technicians or paramedics within its list of the health care professionals who are expressly covered by the privilege. Moreover, the statute by its terms does not extend the privilege to people who work for or with covered professionals. By way of contrast, CPLR 4503 — which codifies the attorney-client privilege— expressly includes an attorney “or his employee” within that privilege. Thus there is a strong argument to be made that EMT’s are not covered by CPLR 4504.
*379 On the other hand, it has long been settled that the health care professional’s privilege does extend beyond those professionals expressly listed in the statute to those people who act as agents for or assistants to covered professionals. (See 8 Wig-more, Evidence § 2382, at 834 [McNaughton rev] [privilege would apply to an unlicensed nurse “or other skilled therapeutic practitioner * * * when acting as an assistant or agent to a regular practitioner”].) Thus, for example, in Rarogiewicz v Brotherhood of Am. Yeomen (242 NY 590 [1926]), the Court of Appeals (construing a predecessor statute to CPLR 4504) held that a patient’s statements made to a Ms. Nelson — a medical “interne” — at the time of the patient’s admission to the hospital were privileged because it appeared that the intern was acting as an agent for the attending physician. In more recent years, it has similarly been held that the CPLR 4504 privilege extends to a dental hygienist who works for a dentist. (See Desai v Blue Shield of Northeastern N.Y., 146 AD2d 264 [3d Dept 1989].) The broadest formulation of the extent of the privilege is set forth in People v Christopher (101 AD2d 504, 530 [4th Dept 1984], revd on other grounds 65 NY2d 417 [1985]), where the Fourth Department indicated that the health care professional’s privilege applies to all those “acting in concert with covered medical personnel” (emphasis added; accord, Desai, 146 AD2d at 266).
A number of courts have looked at the specific question whether EMT’s are covered by the health care professional’s privilege. None has definitively resolved the question. In People v Bowen (229 AD2d 954 [4th Dept 1996]) a witness who was training to become an EMT testified to certain statements that were volunteered by the defendant when defendant arrived at the hospital. The Fourth Department assumed for argument’s sake that the witness qualified as a person covered by the CPLR 4504 privilege, but found that defendant had failed to establish that his statements were intended to be confidential; accordingly, the statements were properly admitted at trial.
A pair of trial court cases (both, oddly enough, from Monroe County) seem to come to opposite conclusions as to whether EMT’s are covered by the privilege. In People v Hanf (159 Misc 2d 748, 750 [Monroe County Ct 1994]), the County Court indicated that an EMT who responded to the scene of a homicide was covered by the privilege because the proof had shown that the EMT acted as an agent of a doctor “following the prescribed protocol and acting at the direction and supervision of a physician.” The privilege nevertheless did not apply in *380 Hanf because the statement at issue was made not by the patient to the EMT, but was instead made by her husband, the defendant, who had killed his wife and then waited at the scene and talked to the EMT.
The decision in People v Ackerson (149 Misc 2d 882 [Monroe County Ct 1991]) points in the opposite direction. The County Court there recognized that where an EMT acts as an agent for a doctor, the CPLR 4504 privilege applies. But the Ackerson court further found that in the ordinary case the privilege should not apply to an EMT because, according to that court:
“[T]he physician and the emergency medical technician serve complementary but completely different functions * * * In the absence of acting as an agent for a physician, not the case here, the emergency medical technician is not charged with the responsibility for gathering information for diagnosis and/or treatment of illness or injury, but only with the job of preventing further illness or injury through well-learned, sophisticated and thoughtful first aid.” (149 Misc 2d at 884-885.)
Analysis
The question presented is whether defendant Mirque’s statements to EMT Sturdivant about his drinking are privileged pursuant to CPLR 4504 and should therefore be excluded at trial. The broader issue raised is whether and under what circumstances statements made by a patient to an EMT or paramedic should be covered by the section 4504 privilege.
The issue is admittedly a close one. As the conflicting opinions in Hanf and Ackerson illustrate, this case falls into that small category of cases that “might be decided either way” in that “reasons plausible and fairly persuasive might be found for one conclusion as another”; the case thus calls upon the court to exercise that “balancing of judgment, that testing and sorting of considerations of analogy and logic and duty and fairness” that lie at the heart of the judicial process. (B. Cardozo, The Nature of the Judicial Process, at 164-165 [1921].)
The small body of prior case law concerning statements made to EMT’s does not establish any clear rule. The approach of the courts in those prior cases has been to examine the nature of the relationship between the EMT and those professionals who are expressly covered by the statutory privilege, and then to ask whether the EMT falls within the scope of the privilege by virtue of that relationship. That approach is perfectly logical *381 and fair, and it is consistent with precedent in similar cases (such as Rarogiewicz) involving health care personnel not expressly covered by the statutory privilege.
However, the focus of the decisions in Ackerson, Hanf and, to a lesser degree, Bowen has been on the somewhat narrower inquiry whether the EMT in each case could be regarded as the “agent” of a particular physician, and thus on the formal nature of the employment relationship between the EMT and the physician. That focus solely on the issue of agency is too restricted. Desai and Christopher instead both indicate that the health care professional’s privilege extends not only to a covered professional’s “agents,” but also to those who “assist” or “act in concert with” covered medical personnel.
In point of fact, the precise nature of the employment relationship between EMT’s and physicians and nurses is something of a mixed bag. An EMT is usually not an employee of an individual physician or nurse. That is so because EMT’s are not ordinarily hired, fired or supervised directly by any doctor or nurse. The EMT’s of New York City’s Emergency Medical Service were until recently considered to be employees of the New York City Health and Hospitals Corporation. They are now considered to be employees of the City’s Fire Department. Some other EMT’s and paramedics are employed by the private or public hospitals for which they operate ambulances; still others are employed by independent ambulance companies. In sum, it usually cannot be said as a formal matter that the EMT is an employee of a particular doctor or nurse; nor can it even be said in every case that a particular hospital is the common employer of both the EMT and a doctor or nurse.
Nevertheless, almost everything that an EMT does is directed toward assisting the hospital’s doctors and nurses in treating the patient. Regardless of the formal identity of the EMT’s employer, in reality the EMT acts as the agent in the field for the hospital’s medical staff. The EMT dispenses medical treatment at the scene to the extent permitted by his training and position,[1] and — more important for present purposes— the EMT gathers information for the hospital about the patient’s medical condition from the patient and others. In the case of EMT’s who work for New York City’s EMS, that information is summarized in writing in the EMT’s ambulance call report which the EMT must turn over to the hospital’s triage *382 nurse as soon as the patient arrives at the hospital. In other cases, the information is relayed ahead by the EMT from the ambulance to the hospital by radio while the patient is en route.
It is this part of the EMT’s job — gathering medical information from the patient and relaying it on to the hospital’s medical staff — that is most important for purposes of privilege analysis. True, in most cases the EMT is probably not the full-blown “agent” of the hospital or the hospital’s doctors or nurses for purposes of contractual or tort liability — especially when the EMT is employed by the City’s EMS rather than by a particular hospital. But for the more limited purposes of privilege analysis, the EMT is nevertheless acting as an agent for and assistant to the hospital’s medical staff when interviewing the patient and reporting the results of that interview to the hospital. Or, to borrow the language of Christopher and Desai (supra), when the EMT interviews the patient and then reports to the hospital the EMT is plainly “acting in concert with covered medical personnel.”
Interviewing the patient can also be the most important part of the EMT’s job for the patient’s purposes. There are many cases where a patient loses consciousness before making it to a hospital. Such a patient cannot talk to the hospital staff. He cannot tell the hospital’s doctors and nurses whether he has recently ingested alcohol or drugs — and that information can be very important for purposes of immediate medication and treatment. More generally, and on the simplest level, such a patient cannot tell the hospital what has happened to him and what his symptoms are. Obviously, the hospital’s doctors and nurses need that information in order to properly care for the patient. The EMT gets it for them. In a very real and urgent sense the EMT acts as agent for both the patient and the hospital in this regard.
As noted above, the health care professional’s privilege is to be given a broad and liberal construction in order to carry out its purposes. One of the privilege’s chief purposes is to encourage candor between patient and caregiver so that proper care can be given and life and health thereby preserved. A patient faced with a life-and-death emergency should not need to concern himself with the precise nature of the employment relationship between the EMT who has come to the patient’s rescue and a particular physician or registered nurse. The patient should rather be encouraged, to the degree reasonably possible, to simply speak the truth to the EMT — while there is *383 still time to speak — without worrying about such legal niceties. The concerns and calculations of a litigious world have already intruded too far into the sphere of medicine. A patient bound for the hospital by ambulance should not be required to master the rules of agency before speaking freely.
For these reasons, the court holds that where, as here, an EMT speaks to a patient and obtains medical information and then reports that information to the hospital’s medical staff, the statutory privilege of CPLR 4504 applies. Accordingly, the proposed testimony of EMT Sturdivant that defendant Mirque made admissions to her concerning his drinking was excluded at trial.[2]
Conclusion
The motion in limine is granted.

. According to EMT Sturdivant’s testimony, an EMT can splint fractures, dress wounds, perform CPR and immobilize a patient, but is not permitted to administer medication.

. It should be noted that the very same reasons that support the rule adopted by the court herein also suggest certain limitations on that rule. Most important, there are of course many cases involving minor injuries or illness where an EMT simply treats the patient at the scene and does not need to take the patient to the hospital or to communicate with the hospital about the patient. In such a situation, the argument for privilege on the theory that the EMT acts as agent for or assistant to the hospital’s medical staff would be much weaker. But that is a case for another day.