STATE OF MINNESOTA

IN SUPREME COURT

A23-0516

Court of Appeals                                          Hudson, C.J.
                           Concurring, Hennesy, Thissen, Procaccini, JJ.
                                               Took no part, Gaïtas, J.

State of Minnesota,

                        Respondent,

vs.                                                 Filed: March 18, 2026
                                               Office of Appellate Courts

Anthony Richard Smeby,

                        Appellant.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam E. Petras, Senior Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.      The physician-patient privilege statute, Minn. Stat. § 595.02, subd. 1(d) (2024), does not protect communications between patients and paramedics unless the paramedic is acting under the direction of the treating physician.

2.      Statements that a patient makes to a third party who is not a necessary and customary participant in the consultation or treatment are not protected by the nurse-patient privilege statute.

1

3.      Nonprivileged information in a patient's medical records does not automatically become privileged when it is transmitted to or acquired by a healthcare provider.

4.      The physician-patient privilege statute does not prohibit a district court from issuing an order granting the State's request for a warrant authorizing a particularized search of a criminal suspect's medical records where the suspect was injured at the scene of a traffic accident.

Affirmed.

O P I N I O N

HUDSON, Chief Justice.

This case presents several questions for our consideration.  First, we must consider the circumstances under which the physician-patient privilege statute, Minn. Stat. § 595.02, subd. 1(d) (2024), protects communications between patients and paramedics.  Second, we must assess whether the nurse-patient privilege covers statements that a patient makes to a third party who is not a necessary and customary participant in the consultation or treatment.  Third, we must decide whether nonprivileged information in a patient's medical records automatically becomes privileged when it is transmitted to or acquired by a healthcare provider.  Finally, we consider whether the physician-patient privilege statute prohibits a district court from issuing an order granting the State's request for a warrant authorizing a particularized search of a criminal suspect's medical records where the suspect was injured at the scene of a traffic accident.

In August 2021, law enforcement officers responded to the scene of a three-car accident and found appellant Anthony Richard Smeby unconscious behind the wheel of one of the cars. After an officer administered two doses of Narcan,[1] Smeby regained consciousness. Ambulance paramedics transported Smeby to a hospital. A district court later signed a search warrant presented by law enforcement that authorized the State to search the medical records and ambulance run sheets related to Smeby from the date of the accident. The search revealed that Smeby told the paramedics and his girlfriend that he had used heroin.

After the State charged Smeby with driving while under the influence of a controlled substance, he moved to suppress the medical records and ambulance run sheets, arguing that their disclosure violated statutory privilege. He also argued that the search warrant was impermissibly overbroad. Although the district court suppressed some of the medical records, it concluded that neither physician-patient privilege nor the nurse-patient privilege protected Smeby's statements to the paramedics or his girlfriend, or any statements by his girlfriend herself. The district court also concluded that the search warrant was sufficiently particular. Following a jury trial, Smeby was convicted of the charged offense.

The court of appeals affirmed Smeby's conviction, *State v. Smeby*, 4 N.W.3d 165 (Minn. App. 2024), concluding that paramedics are categorically excluded from the physician-patient privilege statute, *id.* at 169–70; that the physician-patient privilege[2]

---

[1]     Narcan is a treatment designed to rapidly reverse the effects of an opioid overdose.

[2]     The court appeals did not make a distinction between the physician-patient privilege and the nurse-patient privilege.

3

statute did not protect Smeby's statements to his girlfriend (which she shared with a nurse), *id.* at 171; and that the search warrant was not impermissibly overbroad, *id.* We granted Smeby's petition for review.

We conclude that the court of appeals erred when it adopted a categorical rule for paramedics because under *State v. Staat*, 192 N.W.2d 192, 197 (Minn. 1971), when a paramedic is acting "under the direction" of the treating physician, the physician-patient privilege statute protects communications between the patient and the paramedic. This error, however, does not affect the outcome of this case because Smeby failed to establish that the paramedics treating him were working under the direction of the treating physician. We also conclude that the court of appeals did not err when it determined that Smeby's statements to his girlfriend, which she shared with a nurse, were not protected by the physician-patient privilege because his girlfriend was not a necessary and customary participant in the consultation or treatment. Next, we conclude that nonprivileged information in a patient's medical records does not automatically become privileged when it is transmitted to or acquired by a healthcare provider. Lastly, we conclude that the physician-patient privilege statute does not prohibit a district court judge from issuing a warrant authorizing a particularized search of a criminal suspect's medical records where the suspect was injured at the scene of a traffic accident. Based on these conclusions, we affirm the ultimate decision of the court of appeals, although on other grounds.

**FACTS**

On August 4, 2021, law enforcement officers investigated a multi-car accident in Brooklyn Park that involved appellant Anthony Richard Smeby. Smeby's vehicle had

4

crashed into another car, causing it in turn to crash into the car in front of it. An officer found Smeby unconscious behind the wheel with the airbags deployed, the engine running, and the transmission in drive. After Smeby failed to respond to the officer's attempts to wake him, the officer administered Narcan. After two doses of Narcan, Smeby regained consciousness. Paramedics treated Smeby and noted that he "appeared to be under the influence of a narcotic because he had pinpoint pupils, was displaying erratic behavior, and was sweating profusely." As Smeby was being transported to North Memorial Hospital, he told a paramedic that he had been using "too much" heroin. At the hospital, Smeby told his girlfriend that he had taken heroin, and she shared that statement with a nurse.

On September 28, 2021, a district court issued a warrant to search for "[c]opies of all medical records and ambulance run sheets for [Smeby] . . . for the date of 08/04/21" from North Memorial Medical Center. The hospital released Smeby's records, which included notes about Smeby's statements to the paramedic and the statement he made to his girlfriend, which she shared with the nurse. A week later, the State charged Smeby with driving while under the influence of a controlled substance, Minn. Stat. § 169A.20, subd. 1(2) (2024).

Smeby moved to suppress the medical records and run sheets, arguing that their disclosure violated the physician-patient privilege statute. He also argued that the search warrant was impermissibly overbroad. After holding a suppression hearing, the district court determined that some of Smeby's medical records were inadmissible under the physician-patient privilege statute. The district court, however, determined that the statute did not prohibit the disclosure of Smeby's statements to paramedics, Smeby's statements

5

made in the presence of his girlfriend,[3] and his girlfriend's own statements. The district

court acknowledged that in *Staat* we said that the protections in the physician-patient

privilege statute extend "by implication to nurses or attendants who are employees or acting

under the direction of the physician examining or treating the patient." 192 N.W.2d at 197

(citation omitted) (internal quotation marks omitted). But the district court concluded that

"any communications between defendant and the paramedics, and any resulting treatment

records, are not excluded under the physician-patient privilege" because

> Minnesota's appellate courts have not extended the privilege to cover
> paramedics, EMTs, or other emergency medical personnel. Emergency
> medical personnel who report to the scene of an accident are not acting under
> the direction of any examining or treating physician but are acting
> autonomously to triage an individual's medical conditions and provide
> immediate treatment. This draws an important distinction between nurses
> and paramedics, EMTs, and other emergency medical personnel, such that
> an extension of the *Staat* holding is not compelled.

After the district court denied Smeby's suppression motion, the case proceeded to a jury

trial. The jury found him guilty as charged.

Smeby appealed, arguing that the disclosure of his statements to the paramedics and

his girlfriend violated the physician-patient privilege statute. *Smeby*, 4 N.W.3d at 167, 171.

He also argued that the search warrant was impermissibly overbroad. *Id.* at 167.

The court of appeals affirmed. *Id.* at 171. It held that Smeby's statements to the

paramedics were not protected by the physician-patient privilege because "[p]aramedics

are not among the listed professionals" in Minn. Stat. § 595.02, subd. 1(d). *Id.* at 169. The

---

[3] The district court order refers to Smeby's statements made in the presence of his girlfriend, which are not at issue in this appeal.

6

court of appeals ultimately held that "under the plain language of Minn. Stat. § 595.02, subd. 1(d), the physician-patient evidentiary privilege does not apply to communications between paramedics and patients." *Id.* The court of appeals also concluded that our decision in *Staat*, 192 N.W.2d at 197, did not alter its analysis. *Smeby*, 4 N.W.3d at 169–70. In *Staat*, we wrote, "the physician-patient privilege extends by implication to *nurses* or *attendants* who are *employees or acting under the direction of the physician examining or treating the patient*." 192 N.W.2d at 197 (emphases added) (citation omitted) (internal quotation marks omitted). The court of appeals concluded that, because "[t]he paramedics who transported [Smeby] to the hospital were not 'under the direction' of the emergency-room physician who treated him," the reasoning underlying *Staat*'s extension of the privilege to nurses or attendants did not apply here. *Smeby*, 4 N.W.3d at 170. As for the statements Smeby made to his girlfriend, which she shared with the nurse, the court of appeals determined that the statements were not protected by the physician-patient privilege because his girlfriend was not a necessary and customary participant in the consultation or treatment. *Id.* at 171. Lastly, the court of appeals concluded that the search warrant was not impermissibly overbroad. *Id.* at 170.

Smeby petitioned this court, and we granted review.

**ANALYSIS**

We first consider whether the court of appeals erred when it adopted a categorical rule that a patient's statements to paramedics are not protected by the physician-patient privilege statute. Second, we consider whether the court of appeals erred when it determined that the statements Smeby made to his girlfriend, which she shared with a

7

nurse, were not protected by the physician-patient privilege because Smeby's girlfriend was not a necessary and customary participant in the consultation or treatment. Next, we decide whether nonprivileged information in a patient's medical records automatically becomes privileged when it is transmitted to or acquired by a healthcare provider. Lastly, we consider Smeby's argument that the physician-patient privilege statute prohibits a district court from issuing a warrant authorizing a particularized search of a criminal suspect's medical records where the suspect was injured at the scene of a traffic accident.

I.

"We review evidentiary rulings by a district court regarding the availability of a privilege established by statutory or common law for an abuse of discretion." *State v. Zais*, 805 N.W.2d 32, 36 (Minn. 2011). "But the initial determination of whether a particular testimonial privilege or exception exists as a matter of law is a question that we review de novo." *Id.*; *see also State v. Expose*, 872 N.W.2d 252, 257 (Minn. 2015) ("The applicability of an evidentiary privilege is a question of law that we review de novo.").

Minnesota's physician-patient privilege statute provides that

> [a] licensed physician . . . shall not, without the consent of the patient, be allowed to disclose any information or any opinion based thereon which the professional acquired in attending the patient in a professional capacity, and which was necessary to enable the professional to act in that capacity.

Minn. Stat. § 595.02, subd. 1(d). The physician-patient privilege is "solely a creature of statute." *State v. Atwood*, 925 N.W.2d 626, 631 (Minn. 2019) ("The physician-patient privilege did not exist at common law in Minnesota. It has no constitutional underpinnings."). We have explained that "[t]he theory underlying this privilege is that a

8

patient's fear of an unwarranted, embarrassing, and detrimental disclosure in court of information given to his doctor would deter the patient from freely disclosing his symptoms to the detriment of his health." *Staat*, 192 N.W.2d at 195 (citation omitted) (internal quotation marks omitted). We have also generally construed the statute narrowly, in part because, "[a]lthough courts must be alert to safeguard the purpose of evidentiary privileges, they must be equally alert to see that these privileges are not enforced in such a blind and sweeping manner that they unnecessarily become vehicles for the suppression of evidence which is not privileged." *Atwood*, 925 N.W.2d at 631–32 (citation omitted) (internal quotation marks omitted).

In *Staat*, an orderly at a hospital acquired two bottles of drugs from the defendant. 192 N.W.2d at 194–95. We addressed whether the orderly's discovery of the drugs was protected by the physician-patient privilege and, thus, inadmissible at trial. We held that the orderly could testify about his discovery of the drugs on the defendant. *See id.* at 199.

In so holding, we explained that the physician-patient privilege statute requires determining

> whether the evidence in a particular case establishes (1) that a physician-patient relationship existed; (2) that the 'information' acquired by the physician was of the type contemplated by the statute; (3) that such information was acquired by the physician in attending the patient; and (4) that the information was necessary to enable him to act in a professional capacity.

*Id.* at 196. We determined that "the physician-patient privilege extends by implication to nurses or attendants who are employees or acting under the direction of the physician examining or treating the patient." *Id.* at 197 (citation omitted) (internal quotation marks

9

omitted).  We explained that "to justify application of the [physician-patient] privilege, the trial court had to be persuaded that the bottles of drugs were obtained by the orderly as an aid to the physician attending him, and only for the purposes of diagnosis or treatment." *Id.* (citation omitted) (internal quotation marks omitted).  Consequently, we concluded that the privilege "does not exempt a third person who . . . gained the information . . . from testifying unless the third person is an agent of the physician." *Id.* at 197–98.

Even though the physician in *Staat* told the orderly to "[f]ind something" as the orderly was conducting his routine search of the patient, we determined that the trial court was still not required to find an agency relationship between the physician and the orderly because the orderly "would have done [the routine search] without such instructions." *Id.* at 198.  We said that "[t]he mere fact that a physician gives instructions does not give rise to a master-servant relationship or the application of the so-called borrowed-servant principle, especially where such instructions duplicate the assigned duties of the hospital employee." *Id.*  Rather, we concluded that

> [t]he test is the physician's control over the hospital employee, and the helpful cases are found mainly in malpractice actions.  To hold that the orderly under this evidence was the hospital physician's servant as a matter of law, so as to make the physician vicariously liable for any negligent act committed by the orderly in the course of assisting the physician, would hardly be justified upon this record.

*Id.*  We did not resolve the factual question of "whether discovery of the narcotics was 'necessary' to enable the physicians to act in their professional capacity" because "the absence of one essential fact," i.e., the lack of an agency relationship between the physician and the orderly, "is fatal" to a claim of physician-patient privilege.  *Id.*

10

Here, the court of appeals acknowledged our holding in *Staat* and determined that the paramedics were not acting under the direction of the ER physician. *Smeby*, 4 N.W.3d at 169–70. The court of appeals, however, ultimately adopted a categorical rule that "under the plain language of Minn. Stat. § 595.02, subd. 1(d), the physician-patient evidentiary privilege does not apply to communications between paramedics and patients" because paramedics are not listed in the statute. *Id.* at 169. This conclusion erroneously precludes the possibility that a paramedic could be "acting under the direction of the physician examining or treating the patient" and therefore subject to the privilege of someone who is expressly listed in the statute, namely a physician, by implication under an agency theory. *Staat*, 192 N.W.2d at 197 (citation omitted) (internal quotation marks omitted). The court of appeals' holding incorrectly suggests that the privilege can never apply to communications between paramedics and patients. We now clarify that Minn. Stat. § 595.02, subd. 1(d), applies to communications between paramedics and patients if the paramedic is acting "under the direction" of the treating physician such that there is an agency relationship with the physician.

The issue here, then, is whether Smeby carried his burden to establish that the paramedics were "acting under the direction of the physician" when examining Smeby. *Staat*, 192 N.W.2d at 197 ("[T]he burden rests upon the claimant of the privilege to establish all the facts necessary to invoke it."). We conclude that Smeby failed to carry his burden.

To invoke the privilege, Smeby must establish that the paramedics were acting under the direction of his physician. To do so, Smeby relies, in part, on the treating

physician's testimony at trial about his relationship with other medical professionals. Smeby's physician said, "I trust my—I trust the paramedics. I trust my prehospital providers. I trust my nurses. Everybody that I work with in my team, we all work together every single day. We're dealing with all the same problems and we trust each other." The physician's testimony does not help Smeby. First, the physician's testimony is not properly before us. The challenged privilege decision was raised in a contested omnibus hearing. Although the physician's testimony ultimately became part of the record at trial, his statements "were not part of the pretrial record at the time of the contested omnibus hearing," and thus we do not consider them. *State v. Garding*, 12 N.W.3d 697, 699 n.1 (Minn. 2024) ("We do not consider three additional photographs or three narrative police reports that are part of the complete record but were not part of the pretrial record at the time of the contested omnibus hearing."). Second, even if the testimony were considered, the physician's reference to "my team" does not establish that the paramedics or others were acting under the physician's direction, as we have held the privilege requires. *Staat*, 192 N.W.2d at 197–98.

Furthermore, there is even less evidence of an agency relationship here than in *Staat* because, here, there was no direct communication between the physician and the paramedic. Even though there was direct communication in *Staat*, we still held that there was no agency relationship because the orderly would have conducted the routine search of the defendant even without the physician's instruction to "find something." *Staat*, 192 N.W.2d at 198. In sum, Smeby has not established the facts necessary to invoke by

12

implication the protections of the physician-patient privilege statute because he has not

established an agency relationship between the physician and the paramedic.[4]

II.

We also conclude that the statements Smeby made to his girlfriend, who shared the

statements with the nurse, are not protected by the nurse-patient privilege under Minn. Stat.

§ 595.02, subd. 1(g),[5] because Smeby's girlfriend was not necessary to Smeby's treatment.

Although we have never addressed a situation in which a third party made statements about

a conscious adult's medical condition, the court of appeals addressed a similar issue in

*State v. Gillespie*, 710 N.W.2d 289, 298 (Minn. App. 2006), *review denied* (Minn. May 16,

2006). In *Gillespie*, the court of appeals decided that "[t]he presence of a third party during

consultation or treatment renders statements a patient makes to a physician nonprivileged

---

[4]    As a matter of public policy, there are strong arguments for why the Legislature should expressly add paramedics to the persons listed in the physician-patient privilege statute. *See generally People v. Mirque*, 758 N.Y.S.2d 471 (N.Y. Crim. Ct. 2003). However, it should be left to the Legislature to decide whether to amend the statute to include paramedics. *Cf. Morris v. State*, 765 N.W.2d 78, 85 (Minn. 2009) (explaining that public policy issues are better left to the Legislature in the first instance).

[5]    The nurse-patient privilege statute provides as follows:

> A registered nurse, psychologist, consulting psychologist, or licensed social worker engaged in a psychological or social assessment or treatment of an individual at the individual's request shall not, without the consent of the professional's client, be allowed to disclose any information or opinion based thereon which the professional has acquired in attending the client in a professional capacity, and which was necessary to enable the professional to act in that capacity. Nothing in this clause exempts licensed social workers from compliance with the provisions of section 626.557 and chapter 260E.

Minn. Stat. § 595.02, subd. 1(g).

if the third party is not a necessary and customary participant in the consultation or treatment." *Id.* We find the court of appeals' logic persuasive as to both the physician-patient privilege and nurse-patient privilege.

At the time of Smeby's girlfriend's statement, Smeby was conscious and interacting with hospital staff. His girlfriend was not necessary to his treatment because Smeby could have communicated directly with the nurse himself.[6] If Smeby had wanted the information about his heroin use to be confidential, he should not have communicated it to his girlfriend; instead, he should have communicated it directly to the nurse.

Smeby also claims that his girlfriend's statements to the nurse were privileged because his girlfriend inquired about Smeby's future care. We disagree. Smeby could have asked the nurse himself what future care he needed. His girlfriend's presence was not necessary for his treatment. Therefore, her statements to the nurse about Smeby's heroin use are not protected by the nurse-patient privilege.

### III.

Smeby also claims that his statements to the paramedic and the girlfriend's statements to the nurse are privileged because information contained in a patient's medical records becomes privileged as soon as it is transmitted to or acquired by a healthcare provider. But as we noted earlier, Smeby's statements to the paramedic were never

---

[6]     Smeby characterizes his girlfriend as his "caregiver," but attaching that label is beside the point and does not change the analysis. "Caregiver" status notwithstanding, the inquiry as to whether a third person's presence renders otherwise protected communications nonprivileged depends on whether that person was "a necessary and customary participant in the consultation or treatment." *See Gillespie*, 710 N.W.2d at 298.

privileged because the physician-patient privilege statute does not cover paramedics unless a paramedic is working "under the direction" of the physician. The inclusion of Smeby's statements to the paramedic in Smeby's medical record does not change the nonprivileged nature of these statements. Smeby's statements to the paramedic, who was not working under the direction of a physician, about his heroin use are effectively the same as statements made to a stranger on the sidewalk for purposes of the statutory privilege. The physician's mere inclusion of the paramedic's comment in Smeby's medical record does not render the comment privileged.

The same is true for Smeby's girlfriend's statements to the nurse about his heroin use. For the reasons already explained, those statements are not protected by the physician-patient privilege or the nurse-patient privilege. The inclusion of the girlfriend's comment in Smeby's medical record does not render the girlfriend's comment privileged.

We said in *Atwood* that the reason why "written medical records are generally covered by the physician-patient privilege" is because "the medical record is a written record of the information conveyed by the patient to the doctor and the opinion derived by the doctor from that information." 925 N.W.2d at 634 n.11. Similarly, we observed in *Staat* that "[t]he theory underlying [the physician-patient] privilege is that a patient's fear of an unwarranted, embarrassing, and detrimental disclosure in court of information given to his doctor would deter the patient from freely disclosing his symptoms to the detriment of his health." 192 N.W.2d at 195 (citation omitted) (internal quotation marks omitted). That theory regarding a *patient's* fear, however, is inapplicable to the girlfriend's statements to the nurse. And it is not our job to determine whether a similar concern may

15

extend to a patient's willingness to freely disclose his symptoms to a responding paramedic and in turn extend the privilege to that relationship; that is a decision left to the Legislature. Instead, it is "our duty to enforce [the physician-patient privilege] to the full extent reasonably necessary for the attainment of the longstanding legislative policy for which it was created, namely, to provide a shield for safeguarding and promoting confidential *communications between a patient and his attending physician*." *Id.* at 196 (emphasis added). In light of this legislative policy, these principles do not carry the same weight when the medical records include a patient's communication to a nonprivileged third party, as opposed to "information conveyed by the patient to the doctor." *Atwood*, 925 N.W.2d at 634 n.11. Therefore, the general rule that written medical records are covered by the physician-patient privilege does not apply here.

IV.

Lastly, we consider Smeby's argument that the physician-patient privilege statute prohibits a district court from issuing a particularized warrant authorizing a search of a criminal suspect's medical records where the suspect was injured at the scene of a traffic accident.

The United States and Minnesota Constitutions require that a search warrant describe the evidence to be seized with particularity. U.S. Const. amend. IV; Minn. Const. art. I, § 10. "This requirement prohibits law enforcement from engaging in general or exploratory searches." *State v. Bradford*, 618 N.W.2d 782, 795 (Minn. 2000); *see also State v. Hannuksela*, 452 N.W.2d 668, 672 (Minn. 1990) (noting that the prohibition against general warrants prevents "exploratory rummaging through a person's

16

belongings"). When determining whether a clause in a search warrant is sufficiently particular, "the circumstances of the case must be considered, as well as the nature of the crime under investigation and whether a more precise description is possible under the circumstances." *State v. Miller*, 666 N.W.2d 703, 713 (Minn. 2003). Because these determinations are often fact-specific, we afford "a degree of flexibility to the particularity requirement." *State v. Poole*, 499 N.W.2d 31, 34 (Minn. 1993). We have acknowledged that "a temporal limitation may make a warrant sufficiently particular, even if the authorized search is otherwise broad as to subject matter." *State v. Sardina-Padilla*, 7 N.W.3d 585, 600 (Minn. 2024).

Here, the warrant was limited to a search of the medical records and ambulance run sheets related to Smeby from the day of the accident. Based on the totality of the circumstances, as well as the nature of the crime, we conclude that a more precise description was not possible. Consequently, the search warrant was sufficiently particular.

In arguing that the physician-patient privilege statute prohibits a district court from issuing a particularized warrant authorizing a search of a criminal suspect's medical records where the suspect was injured at the scene of a traffic accident, Smeby relies on our decision in *In re Hope Coalition*, 977 N.W.2d 651 (Minn. 2022), where we considered the sexual assault counselor privilege statute, Minn. Stat. § 595.02, subd. 1(k) (2024). We conclude that Smeby's reliance on *Hope Coalition* is misplaced.

In *Hope Coalition*, the defendant was charged with second-degree criminal sexual conduct. 977 N.W.2d at 653. He sought *in camera* review of the victim's sexual assault counselor records, which are protected by the sexual assault counselor privilege statute.

17

*Id.* at 654; Minn. Stat. § 595.02, subd. 1(k). We held that the sexual assault counselor privilege in Minn. Stat. § 595.02, subd. 1(k), does not permit disclosure of privileged records in a legal proceeding—even for *in camera* review—without the consent of the victim. *Hope Coalition*, 977 N.W.2d at 659.

*Hope Coalition* is inapposite here because the sexual assault counselor privilege protects the entirety of the victim's sexual assault counselor records and thus provides broader protection than the physician-patient privilege, which only protects specific information in the patient's record from the physician's disclosure. *Contrast* Minn. Stat. § 595.02, subd. 1(k) (providing that "[s]exual assault counselors may not be allowed to disclose *any opinion or information received from or about the victim* without the consent of the victim.") (emphasis added), *with id.*, subd. 1(d) (providing that a "physician . . . shall not, without the consent of the patient, be allowed to disclose any information or any opinion based thereon which the professional acquired in attending the patient in a professional capacity, and which was necessary to enable the professional to act in that capacity.").

In contrast to the blanket protection given to sexual assault counselor records in the context of legal actions and proceedings, we have identified exceptions to the general rule that written medical records are protected by the physician-patient privilege. *See Atwood*, 925 N.W.2d at 634 n.11 (describing the general rule). For instance, in situations where a criminal defendant seeks a witness's medical records, we have said that although medical records are generally protected from disclosure due to the physician-patient privilege, "like other privileges, the medical privilege sometimes must give way to a defendant's right to

18

confront his accusers." *State v. Evans*, 756 N.W.2d 854, 872 (Minn. 2008) (citation omitted) (internal quotation marks omitted). In those cases, the proper safeguard is "for the district court to review the medical records at issue in camera to determine whether the privilege must give way." *Id.* "This approach strikes a fairer balance between the interest of the privilege holder in having his confidences kept and the interest of the criminal defendant in obtaining all relevant evidence that might help in his defense." *Id.* (citation omitted) (internal quotation marks omitted).

Medical records can include a mix of privileged and nonprivileged information. For instance, as here, medical records might include notes by a physician—which the privilege protects—and notes by or about statements by others that the privilege does not protect. Nevertheless, Smeby persuasively argues that if the police can sift through a patient's medical records to search for nonprivileged information, then the critical bond of confidentiality between a patient and a physician has already been lost. The State's position is equally persuasive: a district court may order disclosure of the medical records, and any privileged information within those records can be suppressed at a later hearing.

Here, Smeby's medical records from the day of the incident included both privileged and nonprivileged information. Most of the contents of his medical records were protected by the physician-patient privilege statute and were therefore suppressed. But some of the contents of Smeby's records—most notably his girlfriend's statements and the statements to the paramedic—were not protected by the privilege. Thus, unlike the sexual assault counselor privilege statute—which protects the entirety of a victim's sexual assault

19

counselor records—the physician-patient privilege statute does not protect the entirety of a patient's medical records.

On balance, the State has the stronger position. Accordingly, we hold that the physician-patient privilege statute does not prohibit the district court from issuing a warrant authorizing a particularized search of a criminal suspect's medical records where the suspect was injured at the scene of a traffic accident.[7]

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals, although on other grounds.

Affirmed.

GAÏTAS, J., took no part in the consideration or decision of this case.

---

[7] The concurrence would establish procedural safeguards to protect privileged materials when law enforcement seizes medical records by search warrant. The court does not address this issue because it was neither addressed by the court of appeals nor adequately briefed by the parties, and thus it is not before the court.

C O N C U R R E N C E

HENNESY, Justice (concurring).

I concur. While I agree that the physician-patient privilege statute, Minn. Stat. § 595.02, subd. 1(d) (2024), did not prohibit the district court from authorizing a particularized search of Smeby's medical records,[1] I write separately because I disagree with the court's decision to allow such searches without establishing safeguards to protect privileged materials. While the court recognizes that "[m]ost of the contents of [Smeby's] medical records" that law enforcement seized under the warrant "were protected by the physician-patient privilege," it compromises that privilege by failing to establish procedures to prevent disclosure and allow neutral magistrate review of privileged materials. I would instead clarify that when a district court issues a warrant authorizing a particularized search of a patient's medical records, such a warrant must provide for an *in camera* review by the district court to safeguard the privileged materials, as well as provide the patient with notice and an opportunity to object to their disclosure.

A search warrant is not designed to—and does not—protect a person's privileged information; it protects a person's right to be free from unreasonable search and seizure by requiring law enforcement to demonstrate to a neutral magistrate that there is probable cause that evidence of a crime exists in the place to be searched. *State v. Bartylla*, 755 N.W.2d 8, 15 (Minn. 2008). In considering whether to issue a search warrant

> [t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons

---

[1]    I join the opinion of the court, except for footnote 7.

C-1

supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). Determining whether there is probable cause to issue a warrant, on its own, does not require a magistrate to consider whether the items law enforcement seeks are privileged. *See In re C.T.*, 999 A.2d 210, 218 (N.H. 2010) (concluding that "the physician-patient privilege is no less valid, and its rationale is no less important, because a magistrate has found probable cause to believe that the privileged records contain evidence of a crime").

The Legislature has recognized, however, that certain distinct privacy interests merit protection, and has passed statutes to safeguard them in legal proceedings. Such privileges hold a "unique place in the law." *State v. Heaney*, 689 N.W.2d 168, 174 (Minn. 2004). Privileges "are created to substantively protect a particular type of relationship deemed valuable to society in general." *Id.* The physician-patient privilege protects the relationship between physicians and patients in order "to promote unfettered communication" between them. *Id.* We have said that it is "our duty to enforce [the physician-patient privilege] to the full extent reasonably necessary for the attainment of the longstanding legislative policy for which it was created, namely, to provide a shield for safeguarding and promoting confidential communications between a patient and his attending physician." *State v. Staat*, 192 N.W.2d 192, 196 (Minn. 1971).

By failing to establish any procedural safeguards here, the court disregards its duty to enforce this privilege and leaves patients with no mechanism for protecting their

privileged materials before their disclosure to law enforcement.[2] We have observed that a protected privilege is already compromised once documents are disclosed to law enforcement. *See State v. McNeilly*, 6 N.W.3d 161, 185 (Minn. 2024) (noting that "mere disclosure" of attorney-client privileged documents to police "could be incredibly damaging: '[O]nce [privileged] information is revealed . . . the information cannot be erased from the minds of the police' " (citation omitted) (internal quotation marks omitted)). The privilege is then further compromised by disclosure to the prosecution. *See*

---

[2]    Although the court attempts to narrow its holding by stating that it applies only to warrants for the medical records of "a criminal suspect," nothing in the court's decision prevents its application to *any* patient's records. Under this holding, law enforcement may obtain a warrant to search a person's medical records if it meets the general standard for a court to issue a warrant, that is, that there is probable cause that evidence of a crime will be found in such records. *See State v. Wiggins*, 4 N.W.3d 138, 145 (Minn. 2024) (noting that magistrates decide, based on the totality of the circumstances, whether there is a fair probability that evidence of a crime or contraband will be found in a specific place). There is no requirement that law enforcement have probable cause that *the particular patient* whose records will be searched was involved in the crime. This may lead to the exposure of innocent patients' privileged records. Consider these scenarios, for example:

(1) Police officers come upon a single-vehicle traffic collision. Both occupants were thrown from the vehicle upon impact, smell like alcohol at the scene, and have injuries for which they are hospitalized. Officers request a search warrant seeking both occupants' medical records to help determine who was driving and whether either was impaired at the time of the collision.

(2) Law enforcement arrives at the scene of a murder and the suspect is wounded as he flees the scene. Law enforcement has probable cause to believe the suspect went to a nearby hospital for subsequent treatment. Officers request a search warrant seeking medical records for every emergency room patient who checked into that hospital with a wound following the murder.

In each scenario, there may be probable cause that a crime was committed and that evidence of the crime will be found in the records requested. But the records sought and which may be turned over to law enforcement are not limited to those of "a criminal suspect."

*Kaur v. Maryland*, 141 S. Ct. 5, 6–7 (2020) (statement Sotomayor, J., respecting denial of certiorari) (discussing the many ways prosecutors could use privileged documents against a criminal defendant). And we have acknowledged that our focus should be "preventing *disclosure* of the communications and materials and on ensuring review of any disputes over the privileged or protected nature of communications and work-product materials by a neutral third party before disclosure." *McNeilly*, 6 N.W.3d at 194.

In order to prevent such disclosures, I would direct, pursuant to our supervisory powers, that when a district court issues a warrant authorizing a particularized search of a patient's medical records, such a warrant must provide for an *in camera* review by the district court to safeguard the privileged materials.[3] The police and prosecution should not have access to a patient's medical records until a judge has reviewed the contents.

In addition, our procedure should require that the patient receive notice that such records were produced and provide the patient with an opportunity to object to their disclosure.[4] *See In re C.T.*, 999 A.2d at 220 (instructing trial courts conducting *in camera* review of records under seal from a medical provider to "determine the manner by which

---

[3] It might also make sense to allow, as an alternative, that the judge who issued the search warrant appoint a special master to review the potentially privileged information, in the event the records are voluminous. *See McNeilly*, 6 N.W.3d at 196 ("The more 'traditional' approach to reviewing sensitive documents is to submit those documents under seal for in camera review by a neutral and detached magistrate or by court-appointed special masters." (citation omitted) (internal quotation marks omitted)).

[4] I recognize that a reviewing judge may not have contact information for a patient whose records are subject to review. It may, therefore, be necessary to involve other individuals or agencies (e.g., prosecutors, physicians or medical providers, or law enforcement) to provide the patient with notice of the seizure of their records.

the patient shall be provided notice that such records were produced" and to provide "the patient and hospital or medical provider an opportunity to object to their disclosure"). This is to provide the patient an opportunity to establish the privileged nature of the documents seized. "[W]hether a document or communication is privileged is a question of fact." *Brown v. Saint Paul City Ry. Co.*, 62 N.W.2d 688, 701 (Minn. 1954) ("When facts are presented upon which the claimed privilege rests, it then becomes necessary for the court to determine whether the privilege exists much the same as in the determination of other fact issues."). The party asserting the privilege bears the burden of establishing "all the facts necessary to invoke" the privilege. *Staat*, 192 N.W.2d at 196–97. A document may not disclose on its face that it is privileged. *State v. Lender*, 124 N.W.2d 355, 358 (Minn. 1963). For such documents, an *in camera* review, by itself, provides no safeguard for a patient's privileged information. Without notice to or opportunity for the patient to show the information is privileged, a reviewing judge may inadvertently disclose information which should have been protected from disclosure in legal proceedings. *Cf. McNeilly*, 6 N.W.3d at 195–96 (requiring that a neutral magistrate review potentially privileged attorney-client communications and notify clients impacted by the potential disclosure before their release to prosecution).

I agree with the court on the issues raised in this case, but I concur to emphasize that further protections are necessary going forward to safeguard patients' privileged materials when law enforcement seizes medical records by search warrant.

THISSEN, Justice (concurring).

I join the opinion of the court, except for footnote 7, and in the concurrence of Justice Hennesy.


PROCACCINI, Justice (concurring).

I join the opinion of the court, except for footnote 7, and in the concurrence of Justice Hennesy.